Argued and submitted March 28, 1990, affirmed January 23, reconsideration denied May 1, petition for review denied June 20, 1991 (311 Or 432)

CLAYTON LAMONT HOWARD,
*Petitioner,*

*v.*

STATE BOARD OF PAROLE,
*Respondent.*

(CA A51026)

804 P2d 509

Steven H. Gorham, Salem, argued the cause and filed the brief for appellant.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner seeks judicial review of a Board of Parole order re-setting his release date. He assigns as error the Board's consideration of his juvenile record in determining his matrix and its application of a rule and Or Laws 1987, ch 634, promulgated and enacted after he was sentenced, in violation of the *ex post facto* clauses of the state and federal constitutions. We affirm.

In 1982, petitioner was convicted of robbery, ORS 164.415, burglary, ORS 164.225, and three counts of rape. ORS 163.375. On each of the rape convictions, he was sentenced to 20 years, with a 10-year minimum, the sentence on one of them to be served consecutively to the others and concurrently with the 20-year sentence, with a 10-year minimum, imposed for the merged robbery and burglary convictions. At petitioner's initial parole hearing on July 22, 1982, the Board set his history/risk score at 2 and his matrix range at 120-170 months. A release date was set at the expiration of 240 months, September 14, 2001, because the Board did not override the minimum sentences.

On December 13, 1988, another review hearing was conducted after the passage of Or Laws 1987, ch 634, to reconsider petitioner's matrix range. The Board amended his history/risk score to 5 and,[1] changed his matrix range to 120-160 months, but refused to override his minimum sentences, thereby upholding his original release date.

■    Petitioner contends that the Board erred in considering certain of his juvenile adjudications in calculating his history/risk score and that, if it had not done so, the Board would have calculated a higher risk score, which would have lowered his matrix range, which, he contends, would have caused the Board to override the minimum sentences. The Board contends that, because it did not vote to override the minimum sentences, the computation of petitioner's history/risk score and matrix is irrelevant. That is not correct, because, as the court pointed out in *Calderon-Pacheco v. Board of Parole,* 309

---

[1] Petitioner convinced the Board to disregard a juvenile probation and to add three points to his history/risk score, resulting in a slightly lower matrix range. His juvenile adjudications after age 16 included the juvenile equivalents of unauthorized use of a motor vehicle, theft II and two counts of robbery II.

Or 454, 788 P2d 1001 (1990), the matters that the Board must consider to make those determinations are relevant to its considering whether to override a minimum sentence. Be that as it may, the Board's rules, adopted pursuant to ORS 144.780(2)(b)(8), require the Board to consider juvenile adjudications of a person over 16 years of age, if the result was formal probation. OAR 255-35-015, Part II, Exh. B, Instr. 2, § (A); *West v. Board of Parole,* 86 Or App 616, 618-19, 739 P2d 1096 (1987). Because petitioner was placed on formal probation when he was 16, that adjudication was relevant in determining whether he was dangerous to the public. *See* ORS 144.780(2)(b)(B). The Board did not err.

After recomputing petitioner's history/risk score, four members of the Board did not vote to overturn petitioner's minimum sentences. ORS 144.335(3). The Board did not violate any of its rules and did not fail to consider any mitigating factors offered by petitioner. Accordingly, it did not err. *Calderon-Pacheco v. Board of Parole, supra.*

■ When petitioner was sentenced in 1982, *former* OAR 255-40-005 provided:

> "(1) Periodic reviews shall be conducted after the prisoner has served 5 years of his prison term and every three years thereafter, starting with the date the prisoner's sentence begins to run."

The new version, adopted in 1987, reads:

> "(1) Personal reviews may be conducted every three years. The board will only conduct a personal review hearing after it has received a recommendation for a 7 months reduction for a period under review * * *."[2]

The rule in effect when petitioner was sentenced entitled an inmate to a hearing every three years. Under the new rule, a three-year review hearing is conducted only when there is a recommendation by the parent institution for a reduction in

---

[2] OAR 255-40-005. The new rule regarding resetting the parole release date, OAR 255-40-025, provides:

> "(1) An established prison term as defined in section 255-05-005(30), may be reduced under section (2) of this rule upon the prisoner's application for a hearing and the receipt of a recommendation from the parent institution.

> "(2) If the prisoner displays an extended course of conduct indicating outstanding reformation, the Board may grant a reduction of up to seven months of the three year period under review, under this section."

the inmate's prison term. Petitioner contends that the Board, in refusing to consider a reduction in his prison term at the December, 1988, hearing applied a new rule that took effect after his conviction, contrary to the *ex post facto* provisions of the Oregon[3] and federal[4] constitutions.

The *ex post facto* provisions of both constitutions are applied similarly. In interpreting the federal constitution, the Supreme Court has determined that two elements are necessary to trigger *ex post facto* analysis: First, the law must be retrospective; and, second, it must disadvantage the person affected by it. *Miller v. Florida,* 482 US 423, 430, 107 S Ct 2446, 96 L Ed 2d 351 (1987). The second element is at issue here.

Although an administrative rule may give rise to an *ex post facto* problem, *see Williams v. Board of Parole,* 98 Or App 716, 719, 780 P2d 793 (1989), *rev den* 309 Or 522 (1990), application of the new rule must result in increased punishment in order to trigger an *ex post facto* analysis. A mere procedural change will not suffice, unless the petitioner is, in some way, disadvantaged. *Miller v. Florida, supra,* 482 US at 433 (*quoting Hopt v. Utah,* 110 US 574, 590, 4 S Ct 202, 28 L Ed 262 (1884)). *Williams v. Board of Parole* was the first Oregon case to apply an *ex post facto* analysis to a Parole Board rule regarding release dates. There, a former rule had authorized the Board either to sustain all or to override all of an inmate's minimum sentences. The new rule authorized the Board to override one minimum and sustain another. We held that the new rule provided the Board with *more* flexibility to impose *lesser* sentences. Therefore, the petitioner was not disadvantaged by the Board's retroactive application of the new rule.

The question here is whether the 1987 rule imposes a greater punishment than did the former rule. It does not. Under the former rule, petitioner's sentence was 20 years, and it remains the same under the new rule. Both the old and new

---

[3] Or Const, Art I, § 21, provides:

"No *ex-post facto* law * * * shall ever be passed * * *."

"*Ex post facto*" is defined in *Perkey v. Psychiatric Security Review Board,* 65 Or App 259, 262, 670 P2d 1061 (1983).

[4] US Const, Art I, § 10, provides:

"No state shall * * * pass any * * * ex post facto Law * * *."

rules, pursuant to ORS 144.122(1)(a), give the Board discretion to reduce an inmate's prison term when it finds "an extended course of conduct indicating outstanding reformation." Under the new rule, in order for the Board to exercise its discretion under ORS 144.122(1)(a), there must be a recommendation from the parent institution; without that recommendation, there will be no hearing to consider a reduction in the prison term.

The changes regarding scheduling of review hearings are procedural. Although a review hearing is no longer automatically scheduled every three years, an inmate may have a hearing every three years, *if* the parent institution recommends one. The institution's staff is in a better position than the Board to evaluate an inmate's conduct. Without the institution's recommendation, there would be no justification for a hearing. The new rule does not disadvantage petitioner, because it does not authorize greater punishment and because its abolition of mandatory hearings is merely a procedural change that does not substantially alter petitioner's rights. Accordingly, application of the new rule to petitioner does not offend the prohibition against *ex post facto* laws.

Finally, petitioner contends that the Board erred in applying Or Laws 1987, ch 634, to him, because, he asserts, it probably increased his matrix range. Although his contention is not fully articulated, we do not understand him to contend that the Board failed to consider anything that it should have considered in making its decision not to override his minimum sentences. Furthermore, the Board recomputed petitioner's history/risk score to his advantage and reduced his matrix range, albeit only slightly. If there was any error, petitioner has not identified or explained it.

Affirmed.