Argued and submitted December 21, 1990, taken In Banc and resubmitted April 3, reversed September 25, reconsideration denied December 11, 1991, petition for review denied January 28, 1992 (312 Or 589)

## STATE OF OREGON,
*Appellant,*

*v.*

## JOHN CLAIR BURKE,
*Respondent.*

(86-1797-C-2, 86-1798-C-2; CA A63692)

818 P2d 511

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender, Salem.

ROSSMAN, J.

Edmonds, J., specially concurring.

## ROSSMAN, J.

The state appeals an order that set aside defendant's conviction, pursuant to ORS 137.225. The issue is whether a conviction for child abuse can be "expunged"[1] from one's criminal record *after* the effective date of a statutory amendment that expressly prevents convictions for that offense from being set aside. We hold that it cannot, and reverse.

In September, 1986, defendant was convicted of sexual abuse in the first degree. ORS 163.425. The victim was a four-year-old girl. Under the statutory scheme that allows certain convictions to be set aside three years after the successful completion of one's sentence, the trial court in November, 1989, granted defendant's motion to set aside his record of the conviction. It concluded that ORS 137.225, *as amended* in 1989, did not apply to defendant's conviction.

ORS 137.225(1)(a) provides:

"At any time after the lapse of three years from the date of pronouncement of judgment, any defendant who has fully complied with and performed the sentence of the court *and whose conviction is described in subsection (5) of this section* by motion may apply to the court wherein that conviction was entered for entry of an order setting aside the conviction[.]" (Emphasis supplied.)

Before October 3, 1989, ORS 137.225(5)(a) provided:

"The provisions of paragraph (a) of subsection (1) of this section apply to a conviction of:

"(a)    A Class C felony."

In 1989, the legislature amended ORS 137.225(5) to exempt convictions for various crimes involving children. Or Laws 1989, ch 774, § 1. ORS 137.225(5) now provides, in part:

---

[1] The act of setting aside a conviction is often referred to as an "expungement" or expunction. However, those terms

"should not be used for an order under ORS 137.225(1)(a). That statute does not call for expunging anything from the record of conviction but for sealing the record. ORS 137.225(3). The record of conviction remains available for use in a later proceeding to set aside a conviction of another offense, ORS 137.225(6)(b), in a civil action, ORS 137.225(9) or in an investigation of the movant in a case 'involving records sealed under this section.' ORS 137.225(10)." *State v. Langan,* 301 Or 1, 4 n 3, 718 P2d 719 (1986).

"The provisions of paragraph (a) of subsection (1) of this section apply to a conviction of:

"(a)  A Class C felony, *except for the following crimes when they would constitute child abuse as defined in ORS 418.740*:[2]

"* * * * *

"(D)  Sexual abuse in the first degree under ORS 163.425[.]" (Emphasis supplied.)

The state asserts that the trial court erred, because ORS 137.225 no longer allows the court to set aside convictions for Class C felonies involving child abuse and because the legislature intended the 1989 amendments to ORS 137.225 to apply to convictions that were entered before October 3, 1989, the effective date of the amendments. Defendant argues that, if the 1989 amendments to ORS 137.225 are applicable to the setting aside of his conviction, the state and federal constitutional prohibitions against *ex post facto* legislation would be violated. Or Const, Art I, § 21; US Const, Art I, § 10, cl 1.

■ ■  The threshold issue is whether the legislature intended the 1989 amendments to ORS 137.225 to apply to convictions that occurred before October 3, 1989. Generally, when amendments are silent regarding their application to past events, we construe them to apply prospectively only. *Olson v. Wheelock,* 68 Or App 160, 162, 680 P2d 719 (1984); *see also Thornton v. Hamlin,* 41 Or App 363, 597 P2d 1307, *rev den* 288 Or 1 (1979). However, here subsection (8) of the statute unambiguously expresses legislative intent to have ORS 137.225 apply, *regardless* of the date of conviction. ORS 137.225(8) provides:

"The provisions of subsection (1) of this section apply to convictions and arrests which occurred before, as well as those which occurred after, September 9, 1971. There shall be no time limit for making such applications."

Because the legislature's intent is evident from the express language of existing legislation, we need look no further. *Whipple v. Howser,* 291 Or 475, 483, 632 P2d 782 (1981).

---

2 ORS 418.740(1)(c) defines "abuse" to include sexual abuse.

ORS 137.225 applies to bar the setting aside of defendant's 1986 conviction.

■ The next issue is whether the application of amended ORS 137.225 to defendant's conviction would violate the prohibition against *ex post facto* laws.[3] In the criminal context, an *ex post facto* law is one that retroactively applies to events that occurred before the law was enacted. It criminalizes acts that were lawful when committed or makes an act a greater crime than when it was committed, changes the elements of the crime or deprives the defendant of a defense, permits conviction on lesser or different evidence than was previously required or increases the quantum of punishment for the crime. *See State v. Gallant,* 307 Or 152, 155, 764 P2d 920 (1988). Certain changes in the law are *not* considered *ex post facto,* even though they may have a deleterious effect on an individual. For example, a change in the evidence code may be retroactively applied to the detriment of a criminal defendant. 307 Or at 155.

■ Because the statutory change in the present case did not create a new crime, change the proof necessary to establish a crime or deprive defendant of a defense, the only question is whether defendant would be subject to greater *punishment* for the crime of child abuse, if we gave effect to the legislature's decision that convictions for that crime may no longer be set aside. *Perkey v. Psychiatric Security Review Board,* 65 Or App 259, 262, 670 P2d 1061 (1983). In *Williams v. Board of Parole,* 98 Or App 716, 780 P2d 793 (1989), *rev den* 309 Or 522 (1990), we found no impermissible *ex post facto* application because the challenged rules did not "substantially change the procedure for considering the length of [the defendant's] sentence." 98 Or App at 721. In *Lindsey v. Washington,* 301 US 397, 57 S Ct 797, 81 L Ed 1182 (1937), the Supreme Court held that removing the possibility of a sentence that was less than the statutory maximum *was* an *ex post facto* law. Similarly, a retroactive elimination of good-

---

[3] Or Const, Art I, section 21, provides:

"No *ex post facto* law * * * shall ever be passed * * *."

US Const, Art I, section 10, provides:

"No state shall * * * pass any * * * *ex post facto* law * * *."

The two provisions are "similarly" applied. *Howard v. State Board of Parole,* 105 Or App 288, 292, 804 P2d 509 (1991).

time credits, which reduced a defendant's opportunity to shorten his prison sentence, has been ruled impermissible. *Weaver v. Graham,* 450 US 24, 101 S Ct 960, 67 L Ed 2d 17 (1981). *See also Williams v. Board of Parole,* 107 Or App 515, 812 P2d 443 (1991). The same logic has been applied to strike down retroactive extensions of probation. *State v. Metzler,* 72 Or App 555, 696 P2d 576 (1985). In each of those cases, the court was called upon to determine whether the defendant was "subjected to a punishment greater than that to which he was susceptible when he committed the crime." 72 Or App at 558. In each case, retroactive application of the law constituted impermissible punishment if it increased the length of time that the defendant would remain under the state's control, decreased the opportunity to have a prison term reduced, or diminished the degree of discretion available to the sentencing judge. *See Lindsey v. Washington, supra,* 301 US at 401.

It follows that elimination of the set aside remedy for a child abuse conviction is not a "punishment" within the meaning of the *Ex Post Facto* Clauses of the Oregon and United States Constitutions. The availability of a procedure for sealing one's criminal record is unrelated to the length or nature of an individual's incarceration or constructive custody. It does not increase imprisonment, forestall parole or extend probation. It does not decrease the trial judge's discretion to impose the sentence that is most appropriate for the individual. Further, it is a *collateral* matter that does not change the primary effect of a conviction. *See* ABA Project on Standards for Criminal Justice, *Standards Relating to Probation,* § 4.3 (Approved Draft, 1970).[4] In *State v. Gallant, supra,* 307 Or at 155, the Supreme Court held that certain peripheral effects—such as using a criminal record to impeach a witness—do not impermissibly change a defendant's punishment or affect any substantive rights and, accordingly, do not amount to an *ex post facto* law. As Justice Frankfurter wrote in his concurrence to *United States v. Lovett,* 328 US 303,

---

[4] The ABA's Probation Standards describe set-aside statutes as "a method by which the *collateral* effects of a criminal record can be avoided or mitigated following the successful completion of a term on probation * * *." (Emphasis supplied.) ABA Project on Standards for Criminal Justice, *Standards Relating to Probation, supra,* at § 4.3.

324, 66 S Ct 1073, 90 L Ed 1252 (1946), "[t]he fact that harm is inflicted by governmental authority does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed. But there may be reasons other than punitive for such deprivation."[5]

The original intent of the prohibition on *ex post facto* laws was to prevent vindictive and arbitrary criminal legislation and to provide fair notice of those acts which will subject an individual to criminal sanctions. *Dufresne v. Baer,* 744 F2d 1543 (11th Cir 1984), *cert den* 474 US 817 (1985). Both goals are achieved here. The legislative intent behind the amendment to ORS 137.225 was *protective,* rather than punitive. It sought to retain child sexual abuse convictions in defendants' criminal records "to protect professions and children where there is a likelihood of some contact with people who have sexual criminal offenses in their records." Tape recording, Senate Floor Debates, May 8, 1989, Side I at 159 (Senator Jim Hill). Allowing daycare centers to discover whether job applicants have been convicted of child abuse does not impose a punishment on criminal defendants. Further, the law does not attempt to "unseal" any previously sealed records. The amendment is reasonably related to a legitimate, nonpunitive governmental objective.

Finally, it should be noted that the social stigma that may attach to an individual with a criminal record is inflicted by the citizenry and the community. The legislature's decision not to permit setting aside defendant's conviction for child sexual abuse exposes him to the possible disapproval of his neighbors but cannot constitute the governmental imposition of a "punishment," in the constitutional sense of that word. Because the amended statute applies to defendant and does not involve an impermissible *ex post facto* application of

---

[5] For example, establishing and later modifying qualifications for the practice of medicine

"is an incident of the State's power to protect the health and safety of its citizens, and its decision to bar from practice persons who commit or have committed a felony is taken as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment of ex-felons." *Flemming v. Nestor,* 363 US 603, 616, 80 S Ct 1367, 4 L Ed 2d 1435 (1960). (Citation omitted.)

the law, we hold that the trial court erred in setting aside the conviction.[6]

Reversed.

**EDMONDS, J.,** specially concurring.

The majority concludes that, because the application of amended ORS 137.225 does not subject defendant to any additional punishment than that prescribed at the time of his conviction and accordingly, it does not violate the prohibitions against *ex post facto* laws. I agree with the majority's result, but not its analysis.

The *Ex Post Facto* Clauses of the state and federal constitutions apply to penal statutes that retroactively increase the punishment for criminal acts. *Collins v. Youngblood,* 497 US ___, 110 S Ct 2715, 111 L Ed 2d 30, 38, 39 (1990) (*citing Calder v. Bull,* 3 US (3 Dall) 386, 390, 1 L Ed 648 (1798)); *see Perkey v. Psychiatric Security Review Board,* 65 Or App 259, 262, 670 P2d 1061 (1983) (*citing Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977)). In *Trop v. Dulles,* 356 US 86, 96, 78 S Ct 590, 2 L Ed 2d 630 (1958), a plurality of the Court said:

> "In deciding whether a law is penal [for purposes of the constitutional prohibitions against *ex post facto* laws], this Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishment—that is to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. *The controlling nature of such statutes normally depends on the evident purpose of the statute.* The point may be illustrated by the situation of an ordinary felon. A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote. If, in the exercise of the power to protect

---

[6] "The existence of a criminal record is simply a fact of life, not part of the sentence and punishment. Defendant had no constitutionally protected right to assume that the legislative remedy of expungement [*sic*] was immutable." *State v. T.P.M.,* 189 NJ Super 360, 460 A2d 167, 171-72 (1983).

banks, both sanctions were imposed for the purpose of protecting bank robbers, the statutes authorizing both disabilities would be penal. But because the purpose of the latter statute is to designate a reasonable ground for the eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise." (Footnotes omitted; emphasis supplied.)

*Amended* ORS 137.225 has incidental penal effects. Contrary to the assertions of the majority, it "punishes" the defendants that fall within its purview. In *Cummings v. Missouri,* 71 US (4 Wall) 277, 18 L Ed 356 (1867), the United States Supreme Court defined "punishment" for *ex post facto* purposes when it held unconstitutional the requirement that a Catholic priest take an oath of loyalty under a provision of the Missouri Constitution. The oath required the affiants to deny that they had ever manifested by act or word any adherence to the cause of enemies of the United States. Another provision declared that any person who was incapable of taking the oath was disqualified from holding certain offices and trusts, which included priests and ministers; yet another provision prescribed criminal penalties for persons who held or exercised those offices or trusts without taking the oath.

The Court reviewed what disabilities were considered to be punishment within the prohibition against *ex post facto* laws. It said:

"The disabilities created by the Constitution of Missouri must be regarded as penalties — they constitute punishment. We do not agree with the counsel of Missouri that 'to punish one is to deprive him of life, liberty or property, and to take from him anything less than these is no punishment at all.' * * * The deprivation of any rights, civil or political, previously enjoyed, may be punishment; the circumstances attending and the causes of the deprivation determining this fact. * * *

"* * * * *

"The theory upon which our political institutions rest is, that all men have certain inalienable rights — that among these are life, liberty and the pursuit of happiness; and that in the pursuit of happiness all avocations, all honors, all

positions, are alike open to everyone, and that in the protection of these rights all are equal before the law. *Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined."* 71 US at 362. (Emphasis supplied.)

Because the provisions of the Missouri Constitution deprived the state's citizens of the right to hold certain offices and pursue certain vocations without having taken an expurgatory oath regarding acts that were not punishable when they were committed, the Court concluded that the provisions violated the prohibition against *ex post facto* laws.

Under the holding in *Cummings,* the changes wrought by the 1989 amendments to ORS 137.225 punish the individuals affected thereby. Before 1989, defendant would have been entitled to have his conviction set aside after the lapse of three years and compliance with the sentence of the court. *See State v. Langan,* 301 Or 1, 718 P2d 719 (1986). Now, under ORS 137.225, *as amended,* he no longer has the opportunity to avoid the legal disabilities and losses that attach as a result of a public record of conviction. The disabilities that flow from a criminal conviction are many.[1] For instance, after a felony conviction, possession of a firearm is unlawful, ORS 166.270, disqualification as a guardian or conservator can occur, ORS 126.050, credit union certificates of approval may not be issued, ORS 723.014, and occupational and professional licenses may be restricted. *See, e.g.,* ORS 670.280; ORS 673.700; ORS 678.111(1)(a); ORS 679.060; ORS 677.190; ORS 726.075. Those disabilities, and others, disadvantage defendant and enhance the quantum of punishment for a crime committed before the enactment of amended ORS 137.225. *See Weaver v. Graham,* 450 US 24, 35, 101 S Ct 960, 67 L Ed 2d 17 (1981); *Rask v. Martinez,* 876 F2d 1496 (11th Cir), *cert den* 110 S Ct 543 (1989). Clearly, that effect is punitive.

However, the amendments to ORS 137.225 were enacted for a nonpenal purpose, and their primary effect is nonpenal. The bill was proposed by the Department of Justice. Its representative testified before the Senate Committee

---

[1] The majority's statement that "the social stigma that may attach to an individual with a criminal record is inflicted by the citizenry and the community" is inaccurate. 109 Or App at 13.

on Judiciary:

> "The purpose of the bill is to guarantee that a criminal record of child abuse will be available to programs or individuals responsible for caring for children. Presently, a juvenile or adult convicted of sexual molestation or criminally mistreating a two-year-old, could have his record expunged. There would be no record of a conviction for such a crime. If that individual later applied to be a day care provider, foster parent, Fairview aide, nursing attendant, teacher's aide, Boy Scout leader, or YMCA counselor, there would be no available record showing that he had been convicted of a child abuse offense. The program would not be aware that a conviction for sexual molestation or criminal mistreatment had occured. [*sic*] That individual could be employed or licensed to care for young children." Exhibit 5, Senate Committee on Judiciary, April 24, 1989, p 1 (testimony of Deborah Wills, Assistant Attorney General in charge of the Family Enforcement Section).

Although *amended* ORS 137.225 has both penal and nonpenal effects, its purpose exempts it from being classified as an *ex post facto* law. Although I disagree with the majority that the disabilities imposed are not additional punishment, I would reach the same result, because the purpose of the statute is nonpenal.