Submitted on record and briefs January 6, reversed and remanded for
reconsideration May 10, 1995

## MICHAEL P. BYRNES,
*Petitioner,*

*v.*

## BOARD OF PAROLE AND
## POST-PRISON SUPERVISION,
*Respondent.*

(CA A82709)

894 P2d 1252

Michael P. Byrnes submitted the brief *pro se*.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Robert K. Lau, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision that requires him to serve 36 months of supervised parole pursuant to ORS 144.085 and to remain on parole for life. He argues that application of ORS 144.085 to him violates constitutional prohibitions against *ex post facto* laws. We review to determine whether the Board's decision is in violation of constitutional or statutory provisions. ORS 183.482(8). We reverse and remand for reconsideration.

In 1981, petitioner pleaded guilty to murder, ORS 163.115, and was sentenced to an indeterminate period in prison, the maximum term to be the remainder of his life. Petitioner was scheduled to be released on parole on September 9, 1993.

At the time petitioner committed the murder, *former* ORS 144.310, *repealed by* Or Laws 1993, ch 680, § 7, provided:

> "When a paroled prisoner has performed the obligations of his parole for such time as satisfies the State Board of Parole that his final release is not incompatible with his welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge; but no such order of discharge shall be made within a period of less than one year after the date of release on parole, except that when the period of the sentence imposed by the court expires at an earlier date, a final order of discharge shall be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the sentence."

In 1993, the Oregon legislature enacted ORS 144.085, which took effect on August 18, 1993. ORS 144.085(1)(b) provides:

> "Prisoners sentenced as dangerous offenders under ORS 161.725 and 161.735, for aggravated murder under ORS 163.105 or for murder under ORS 163.115 shall serve at least three years of supervised parole or post-prison supervision."

Petitioner was released from prison as scheduled. The order under which he was released specified that he was subject to one year of supervised parole, and that he would continue on parole until discharged by the Board. After his

release, the Board realized that ORS 144.085 had taken effect before petitioner's release date. It thereafter issued an order extending the term of petitioner's supervised parole to three years, which is the period mandated by ORS 144.085(1)(b). The order also specified that petitioner would remain on parole until the expiration of his original sentence, which is the remainder of his life. ORS 144.085(3).

Petitioner sought administrative review of the Board's order, arguing that subjecting him to the requirements of ORS 144.085 violates *ex post facto* principles by increasing his punishment after the date on which he committed the underlying crime. The Board denied review. Petitioner now seeks judicial review of the order extending his parole term.

■ Article I, section 21, of the Oregon Constitution provides that "[n]o *ex post facto* law * * * shall ever be passed."[1] An *ex post facto* law is one that makes criminal an act that was lawful at the time it was committed, or a law that increases the punishment for a crime after the commission of the act for which punishment is imposed. *State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988); *State v. Burke*, 109 Or App 7, 11, 818 P2d 511 (1991), *rev den* 312 Or 589 (1992). The *ex post facto* provision applies to a wide range of changes affecting the mechanics of punishment. *See, e.g., United States v. Paskow*, 11 F3d 873, 877 (9th Cir 1993).[2] However, certain peripheral changes in the law, such as using a criminal record to impeach a witness, are not considered to be *ex post facto* laws, even though they may have a deleterious effect on an individual. *See, e.g., Burke*, 109 Or App at 11.

■ We first must determine whether an increase in a mandatory minimum term of parole constitutes an increase

---

[1] The state provision mirrors Article I, section 10, of the United States Constitution, which states: "No state shall * * * pass any * * * ex post facto Law * * *." Petitioner does not differentiate between the state and federal *ex post facto* provisions.

[2] We are not controlled by federal court decisions in our analysis of Oregon's *ex post facto* clause. However, we cite federal decisions, as well as comparable decisions from other states, for their persuasiveness, based on *our* understanding of them. *See, e.g., State v. Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983). It is appropriate that we do so in this case, because the policies that underlie the state and federal guarantees against *ex post facto* laws are similar. *See, e.g., Howard v. State Board of Parole*, 105 Or App 288, 292, 804 P2d 509 (1991).

in "punishment" for the purpose of *ex post facto* analysis. Citing *Burke*, the Board argues that the minimum parole terms mandated by ORS 144.085 are " 'reasonably related to a legitimate, *nonpunitive* governmental objective,' " (emphasis supplied), and are not punishment for *ex post facto* purposes. It asserts that the change in the rules regarding parole terms was prompted by a reduction in resources "available to manage offenders and maintain public safety" and was not designed to further punish offenders.

In *Burke*, we held that a change in the law that eliminated a defendant's opportunity to set aside a sex abuse conviction was not an *ex post facto* law, because the elimination of the set aside remedy was not "punishment." 109 Or App at 12. We noted, however, that the application of laws that "increased the length of time that the defendant would remain under the state's control, decreased the opportunity to have a prison term reduced, or diminished the degree of discretion available to the sentencing judge," constituted punishment. *Id.*

■     Even though parole is founded on principles of reformation, "the underlying nature of imprisonment and parole is penal and deterrent, however enlightened its philosophical overlay may be." *Dietrich v. Brooks*, 27 Or App 821, 825, 558 P2d 357 (1976), *rev den* 277 Or 99 (1977). Individuals on parole are subject to restrictions on their activities substantially greater than those imposed on ordinary citizens. *See* OAR 255-70-001 *et seq.* Further, parole is part of a convicted person's sentence, because the person serves a portion of the sentence in prison and a portion under supervision outside prison walls. *Paskow*, 11 F3d at 881. Because parole is a component of a sentence, no law that increases the term of parole may be applied to a convicted person to the person's detriment if the law was adopted after the date on which the person committed the underlying crime. *Id.* at 882.

Thus, we must determine whether petitioner is disadvantaged by the application of ORS 144.085. Petitioner argues that application of ORS 144.085 to him, which requires him to serve a three-year term of supervised parole and to remain on unsupervised parole for the rest of his life, renders his parole more burdensome than it would have been under the restrictions in effect at the time he committed his

crime. The Board argues that petitioner has not been disadvantaged, because the "amount of time petitioner is required to serve on parole has not changed." The Board points out that it had the discretion under *former* ORS 144.310 to require petitioner to serve the remainder of his sentence on parole. Thus, under either law, petitioner could have been required to spend the rest of his sentence, that is, his life, on parole.

We first address the imposition of the three-year minimum period of supervision. The three-year period of supervised parole does not violate *ex post facto* principles. Although it is true that *former* ORS 144.310(1) gave the Board the discretion to adopt rules that would have permitted a final discharge from parole in as little as one year, the Board did not, in fact, adopt rules that were so lenient.

*Former* OAR 255-90-002 (February 15, 1981), *repealed* October 15, 1993, which was the rule in effect at the time petitioner committed his crime, directed the Board to establish a term of supervised parole based on the offender's crime severity rating and criminal history/risk score. That term could range from two to four years,[3] but a parolee's supervising officer could recommend a shift to unsupervised parole after one year. *Former* OAR 255-90-010(3) (February 15, 1981), *repealed* October 15, 1993. After serving a term of supervised parole, a parolee was required to serve a minimum term of five years on unsupervised parole before becoming eligible for final discharge from parole. *Former* OAR 255-90-002. Thus, the minimum amount of time a parolee had to serve on parole was six years.

Petitioner points out that, under the former rules, he could have served as little as one year on supervised parole whereas now he is required to serve three years. He argues that this requirement that he serve a longer period of time on *supervised* parole violates *ex post facto* principles. We disagree.

Petitioner fails to identify any meaningful distinction between supervised and unsupervised parole. Petitioner

---

[3] Petitioner's crime severity rating is 8 and his criminal history/risk score is 10. Under the matrix provided by *former* OAR 255-90-002 (February 15, 1981), petitioner would have been given a four-year term of supervised parole.

offers no authority that would suggest that the restrictions applied to a parolee on supervised parole versus those placed on a parolee on unsupervised parole are sufficiently different or more burdensome to constitute an increase in punishment. In each case, the conditions placed on a parolee are customized to fit the rehabilitative and supervision needs of the individual. *See* OAR 255-60-008(1)(f) (conditions of parole should be designed for the purposes of reformation and public safety); OAR 253-11-001(2) (describing considerations for post-prison supervision release plans). Thus, the quantum of supervision will vary for each parolee. Absent information to the contrary, we cannot say that the various restrictions placed upon individuals on parole, supervised or unsupervised, constitute punishment for *ex post facto* purposes. Petitioner faced a minimum of six years on parole under the former scheme. Thus, the imposition of a three-year minimum term of supervised parole under ORS 144.085 does not constitute an *ex post facto* violation under the state or federal constitution.

■ We next turn to the requirement that petitioner remain on unsupervised parole for the rest of his life. The Board's order stated that, once on unsupervised parole, petitioner would remain on parole until the expiration of his sentence, in this case, his life. ORS 144.085(3) provides:

"Upon completion of the period of supervision and after reviewing the closing summary submitted under subsection (2) of this section, the board may:

"(a)   Order a period of inactive parole or post-prison supervision that shall continue until the expiration of the sentence; or

"(b)   Extend the supervision period if it finds the offender has not substantially fulfilled the supervision conditions or has failed to complete payment of restitution."

Thus, whereas petitioner could have been discharged from parole prior to the expiration of his sentence under the laws in effect at the time he committed his crime, ORS 144.085(3)(a) requires that he remain on parole until expiration of his sentence.

The Board's argument that petitioner *could* serve his entire life on parole under either of the two schemes is unpersuasive. In *Williams v. Board of Parole*, 107 Or App

515, 520, 812 P2d 443, *on recons* 112 Or App 108, 828 P2d 465 (1991), *rev dismissed* 313 Or 300 (1992), we considered a change in Board rules that took effect after the date of the prisoner's crime and that delayed his opportunity to be released from prison. We held that even though the prisoner was not guaranteed to receive parole at a certain date, the elimination of the opportunity to shorten his prison term made the punishment more onerous, and violated *ex post facto* principles.

In determining the disadvantage to petitioner, we must focus on the change in petitioner's eligibility to receive a lesser parole term than the new law permits, regardless of whether petitioner would actually have received the lesser term. *See Paskow*, 11 F3d at 877. Here, it is the imposition of a requirement that petitioner serve the rest of his life on parole that violates the *ex post facto* prohibition. *See Williams*, 107 Or App at 520; *Paskow*, 11 F3d at 877. Under the rules in effect at the time he committed his offense, petitioner was eligible to be finally discharged from parole after serving a period of supervised parole and a five-year period of unsupervised parole. *Former* OAR 255-90-002 (February 15, 1981). Under ORS 144.085(3)(a), petitioner can never be released from parole.

Application of ORS 144.085(3)(a) to petitioner is contrary to the *ex post facto* clause of the Oregon Constitution to the extent that it requires him to remain on parole for the rest of his life. Hence, ORS 144.085(3)(a) cannot be applied to petitioner.

Reversed and remanded for reconsideration.