Argued and submitted January 11, 1996, on respondent's motion to dismiss filed April 10, 1995, petition for judicial review dismissed March 27, petition for review denied July 30, 1996 (324 Or 18)

ERIC SHELBY,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

(CA A87773)

915 P2d 414

Eric Cumfer, Deputy Public Defender, argued the cause for petitioner. On the reply was Eric Shelby, *pro se*. With Eric Cumfer on the successive response was Sally Avera, Public Defender

Christine A. Chute, Assistant Attorney General, argued the cause for respondent. On the motion were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General. On the reply were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Robert K. Lau, Assistant Attorney General.

Before Landau, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

**HASELTON, J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision deferring his parole release date by two years. The Board has moved to dismiss the petition on the ground that ORS 144.335(2) bars judicial review of its order. We grant the motion to dismiss.

Petitioner was convicted in 1984 of two counts of burglary in the first degree and two counts of burglary in the second degree and was sentenced to ten years in prison. In 1985, petitioner was convicted of two counts of rape in the first degree and one count each of burglary in the first degree, kidnaping in the first degree, and assault in the second degree and was sentenced to 20 years in prison, to be served consecutively to the sentence on his 1984 conviction.

In April 1986, the Board set petitioner's release date as July 14, 1995. ORS 144.120(1)(a). In July 1990, the Board determined that petitioner's release date should not be advanced and scheduled an exit interview for July 1994. The Board further directed that, before the exit interview, petitioner should be evaluated pursuant to ORS 144.125(1). That statute reads, in part:

"(1) Prior to the scheduled release of any prisoner on parole and prior to release scheduled under this section, the [board] may upon request of the Department of Corrections or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the petitioner's conduct during confinement. To accomplish such review by the board, the Department of Corrections shall provide to the board any psychiatric or psychological reports held by the Department regarding the prisoner[.]

"* * * * *

"(3)(a) If the board finds the prisoner has a mental or emotional disturbance, deficiency, condition or disorder predisposing the prisoner to the commission of a crime to a degree rendering the prisoner a danger to the health or safety of the community, the board may order the postponement of the scheduled parole release date until a specified future date."

In April 1994, petitioner was evaluated by Dr. Robert Davis, a clinical psychologist. Dr. Davis concluded:

"From this record as well as very clearly from the psychological testing, the single reasonable conclusion is that [petitioner] does present a severe emotional disturbance in the from of a personality disorder with Antisocial, Narcissistic and Histrionic features which constitute a danger to the health and safety of others in the community at this time."

The Board thereafter continued petitioner's exit interview from July 1994 to January 1995. Either before or during the January 1995 hearing, petitioner was given a copy of the psychological evaluation, and he disputed certain aspects of that evaluation as being incomplete or inaccurate. On July 25, 1995, the Board, pursuant to ORS 144.125(3), deferred petitioner's parole release date by 24 months because:

"Based on all information the Board is considering at this hearing, * * * the Board finds that you do have a mental or emotional disturbance, deficiency, condition or disorder, predisposing you to the commission of a crime to a degree rendering you a danger to the health or safety of the community."

Petitioner seeks judicial review of that order. Respondent has moved to dismiss the petition as being barred by *former* ORS 144.335(2)(e)(A). Until 1993, ORS 144.335 read, in part:

"(1) When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by the final order of the board related to the granting, revoking or discharging of parole or the revoking of post-prison supervision and after exhaustion of administrative review as provided by board rule, such person is entitled to judicial review of the final order.

"(2) The final order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the final order for which review is sought. The board shall submit to the court the record of the proceedings or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the board."

In 1993, the legislature amended subsection (2) to provide:

"Notwithstanding subsection (1) of this section, the board's order is final and is not subject to judicial review when the board:

"* * * * *

"(e)    Postpones a prisoner's release date by two years or less because of:

"(A)    psychological diagnosis under ORS 144.125(3) of an emotional disturbance making the prisoner dangerous to the community[.]"

Finally, in mid-1995, the legislature further amended ORS 144.335 to replace the *former* (1993) subsection (2)(e)(A) with a new subsection, ORS 144.335(3)(g):

"(3)    Notwithstanding subsection (1) of this section, the board's order is final and is not subject to judicial review when the board makes any decision relating to a release date or a parole consideration hearing date, including:

"* * * * *

"(g)    Postponing a prisoner's release date because of a psychological diagnosis under ORS 144.125(3)."

Thus, although *former* ORS 144.335(2)(e)(A) was in effect when petitioner filed his petition for review and when respondent filed its motion to dismiss in April 1995, the 1995 amendment became effective during the briefing of this matter. However, neither party argues that, given that procedural juxtaposition, the 1995 amendment should control—and we perceive no reason why it should. Indeed, where, as here, an inmate's release date is postponed by two years or less, the effect of *former* ORS 144.335(2)(e)(A) and the present ORS 144.335(3)(g) is the same. Accordingly, we consider whether *former* ORS 144.335(2)(e)(A) bars our review.

Petitioner acknowledges that *former* ORS 144.335(2)(e)(A), by its terms, purports to preclude our review. He argues, however, that the statute, either on its face or as applied, is unconstitutional for three reasons. First, denying judicial review in these circumstances violates the separation of powers prescribed by the Oregon Constitution, Article III, section 1, and Article VII (Amended), section 1.

Second, applying ORS 144.335(2) to petitioner violates state and federal constitutional prohibitions against *ex post facto* laws. Or Const, Art I, § 21; US Const, Art I, § 10. Third, denying judicial review of the Board's order deprives petitioner of due process of law guaranteed under the Fourteenth Amendment to the United States Constitution and the right to a remedy in the due course of law as guaranteed by Article I, section 10, of the Oregon Constitution.

■    Before considering the particular merits of petitioner's constitutional arguments, we must first address a question of statutory construction that underlies, and ultimately circumscribes, those arguments: What is the meaning of "judicial review" in *former* ORS 144.335(2)(e)(A)? Petitioner argues that that term encompasses every form of judicial action or relief relating to a Board order. Thus, in petitioner's view, the statute bars not only direct review by this court, but also collateral challenges to Board action via writs of habeas corpus or mandamus, as well as declaratory relief. Conversely, respondent equates "judicial review" with direct review by this court.

We agree with respondent. Although "judicial review" may be ambiguous in the abstract, its meaning in this context is clear. ORS 144.335 was, and is, concerned solely with direct review by the Court of Appeals. Subsection (1) provides for "judicial review" of final orders after exhaustion of administrative remedies. *Former* subsections (3), (4), and (5), which were renumbered as subsections (4), (5), and (6) respectively, in the 1995 amendments, are explicit that the "judicial review" so contemplated is review by this court:

"(3)   The final order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the final order for which review is sought. The board shall submit to the court the record of the proceeding or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the board.

"(4)   The court may affirm, reverse or remand the order on the same bases as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper.

"(5) In the case of disputed allegations of irregularities in procedure before the board not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a master appointed by the court to take evidence and make findings of fact upon them."

Thus, although the Board's orders are not directly subject to the judicial review provisions of the Oregon Administrative Procedures Act, *see* ORS 183.315(5), "judicial review" in ORS 144.335 is a term of art describing, as it does in the APA, direct review of an order in a contested case.[1]

■ We return to petitioner's separation of powers argument. Article III, section 1, of the Oregon Constitution provides, in part:

"The powers of the Government shall be divided into three seperate (*sic*) departments, the Legislative, the Executive, including the administrative, and Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Article VII (Amended), section 1, of the Oregon Constitution provides, in part:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."

■ Those provisions implicate two concerns: "whether one department of government has 'unduly burdened' the actions of another department"; and "whether one department is performing the functions committed to another department." *Rooney v. Kulongoski,* 322 Or 15, 28, 902 P2d 1143 (1995) (citations omitted). Petitioner asserts that ORS 144.335(2) runs afoul of the second concern by empowering the Board, an executive agency, to perform an "adjudicative function," without judicial oversight.

---

[1] We note, moreover, that the legislature amended ORS 144.335(2) in the context of the Oregon Constitution, Article I, section 23, which provides: "The privilege of the writ of *habeas corpus* shall not be suspended unless in case of rebellion, or invasion the public safety require[s] it."

Petitioner's argument is that: (1) All agency adjudications must be subject to judicial review, *accord Perkey v. PSRB*, 65 Or App 259, 364, 670 P2d 1061 (1983). (2) *Former* ORS 144.335(2)(e)(A) bars all judicial review of parole release decisions. And (3) consequently, elimination of such review unduly impairs the judicial power. Even if we were to accept petitioner's major premise, his argument fails because his minor premise is erroneous. *Former* ORS 144.335(2)(e)(A) does not preclude all judicial review of Board release decisions. The statute eliminates only direct, APA-type review.

Petitioner does not explain—and we do not understand—why a statute that precludes only that limited form of review offends the separation of powers. Indeed, he concedes that, if other forms of relief, such as habeas corpus, mandamus or declaratory judgment, are available, there is no separation of powers problem. Having made that concession, however, petitioner has failed to establish that all of those remedies are not available and constitutionally adequate. In particular, he has failed to explain why mandamus is not available, except to say that, in some cases, a petitioner's inability to pay filing fees might pose an impediment. As for habeas corpus, petitioner's sole argument is that the state conceded in another proceeding before a trial court that the writ is not available in cases such as this. Assuming that the state has, in fact, made such a concession, we are disinclined to rule on an issue of such significance on that basis alone.[2] *Compare Fredericks v. Gladden*, 211 Or 312, 325-26, 315 P2d 1010 (1957) (reviewing release decisions on writs of habeas corpus) *and Anderson v. Alexander*, 191 Or 409, 412-13, 229 P2d 663 (1951) (same) *and Burns v. Newell*, 12 Or App 621, 622-23, 507 P2d 414 (1973) (same) *with Jones v. Maass*, 106 Or App 42, 44, 806 P2d 168, *rev den* 311 Or 426 (1991) (writ of habeas corpus not available to challenge release decisions) *and Miller v. Maass*, 95 Or App 445, 447, 769 P2d 788 (1989) (same). In short, we are not persuaded by petitioner's arguments in this case that the statute offends the separation of powers.

---

[2] The state, in fact, asserted in its briefing in support of its motion that "the writs of *habeas corpus* and mandamus would remain available in appropriate cases."

■ ■ Petitioner next contends that, because ORS 144.335(2) was enacted after he committed his crime, enforcing that statute in this case would violate the *ex post facto* protections of the Oregon and federal constitutions.[3] The state and federal *ex post facto* clauses prohibit substantive changes in criminal law and sentencing that "punish acts that were legal at the time they occurred, [increase] the punishment for [criminal] acts, or deprive the defendant of a defense for those acts." *State v. Gallant,* 307 Or 152, 155, 764 P2d 970 (1988). *Former* ORS 144.335(2)(e)(A) obviously does not make previously innocent acts criminal or abrogate preexisting criminal defenses. Consequently, the success of petitioner's *ex post facto* argument turns on whether the statute somehow enhances petitioner's punishment. We conclude that it does not.

*Howard v. State Board of Parole,* 105 Or App 288, 290, 804 P.2d 509 (1991), and *State v. Williams,* 107 Or App 515, 812 P2d 443, *rev dismissed* 313 Or 300 (1992), inform our analysis. In *Howard,* the petitioner challenged the application of a regulation, OAR 255-40-005(1),[4] that replaced the process of mandatory periodic parole review hearings, which existed at the time he committed his crime, with conditional reviews. We concluded that, although the challenged regulation abolished all mandatory review, it did not impose greater punishment than the former rule. Consequently, the

---

[3] Article I, section 21, of the Oregon Constitution provides:

"No *ex-post facto* law, or law impairing the obligation of contracts shall ever be passed[.]"

Article I, section 10, of the United States Constitution provides:

"No state shall * * * pass any Bill of Attainder ex post facto Law, or Law impairing the Obligation of Contract[.]"

[4] The version of OAR 255-40-005(1) that was in effect when the petitioner committed his crimes provided:

"Periodic review shall be conducted after the prisoner has served 5 years of his prison term and every three years thereafter, starting with the date the prisoner's sentence begins to run."

The amended version of the rule, which was promulgated after the petitioner's conviction, provided:

"Personal reviews may be conducted every three years. The board will only conduct a personal review hearing after it has received a recommendation for a 7-month reduction for a period under review[.]"

new rule did not offend the prohibition against *ex post facto* laws:

> "Under the former rule, petitioner's sentence was 20 years, and it remains the same under the new rule. Both the old and new rules, pursuant to ORS 144.122(1)(a), give the Board discretion to reduce an inmate's prison term when it finds 'an extended course of conduct indicating outstanding reformation.' * * *
>
> "The changes regarding scheduling of review hearings are procedural. Although a review hearing is no longer automatically scheduled every three years, an inmate may have a hearing every three years, *if* the parent institution recommends one. * * * The new rule does not disadvantage petitioner, because it does not authorize greater punishment and because its abolition of mandatory hearings is merely a procedural change that does not substantially alter petitioner's rights." 105 Or App at 292-93 (emphasis in original).

In *Williams*, we addressed a qualitatively different challenge to revisions in the "personal review" "prison term reduction" rules. Under the rules in effect when that petitioner committed his crimes, he was entitled to a mandatory review hearing, which could have yielded a maximum reduction of 20 percent (24 months) of his total prison term. However, under the subsequent rule, promulgated after the petitioner's crimes, he could have received two review hearings, yielding a total reduction of no more than 14 months. We concluded that application of the new rule resulted in greater punishment because it "eliminate[d] petitioner's opportunity to have his prison term reduced by an additional 10 months." 107 Or App at 520.

This case is analogous to *Howard*, not to *Williams*. Unlike the regulation in *Williams*, which eliminated a substantive opportunity for a reduction in the petitioner's prison term, *former* ORS 144.335(2)(e)(A) did not affect the substantive standard for postponing a scheduled release date. Both before and after the 1993 amendments to ORS 144.335, the standard was, and is, whether the prisoner "has a mental or emotional disturbance, deficiency, condition or disorder predisposing the prisoner to the commission of a crime to a degree rendering the prisoner a danger to the health or safety

of the community." ORS 144.125(3)(a). The only change is procedural, *i.e.*, whether inmates can directly appeal such determinations to this court. That procedural change did not increase petitioner's punishment. *See Howard*, 105 Or App at 292-93. *Accord Miller v. Florida*, 482 US 423, 430, 107 S Ct 2446, 96 L Ed 2d 351 (1987) ("[N]o *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'"). *Cf. Collins v. Youngblood*, 497 US 37, 58-61, 110 S Ct 2715, 111 L Ed 2d 30 (1990) (Stevens, J., concurring) (addressing when "procedural" changes are so substantive as to trigger protection of federal *ex post facto* clause).

■      Petitioner asserts, finally, that applying *former* ORS 144.335(2)(e)(A) violates due process of law as guaranteed under the Fourteenth Amendment to the United States Constitution[5] and the right to a remedy in due course of law under Article I, section 10, of the Oregon Constitution.[6] Petitioner's analysis is amorphous. However, to the extent that we can tell, he seems to make two arguments. First, the statute unconstitutionally forecloses challenges to its own constitutionality. Second, and more broadly, due process requires direct judicial review of the Board's decisions.

Petitioner's first argument proceeds from a false premise. Although petitioner contends that *former* ORS 144.335(2)(e)(A) denies him a "forum" for litigating the statute's constitutionality, that is not so. We have, obviously, considered and adjudicated petitioner's separation of powers and *ex post facto* challenges in the context of this proceeding. Moreover, as noted previously, *former* ORS 144.335(2)(e)(A)

---

[5] The Fourteenth Amendment to the United States Constitution provides, in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[6] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

does not prevent inmates from collaterally attacking either the statute or the Board's decisions to defer release through a panoply of procedures, including declaratory judgment or certain special writ proceedings, and actions pursuant to 42 USC § 1983.

■ Petitioner's second and more general argument reduces to the proposition that direct judicial review of the Board's deferral decisions is an essential component of the process due petitioner and others similarly situated. Petitioner does not challenge the sufficiency of the Board's processes, nor could he—the record discloses that he was provided with a copy of the psychological evaluation and afforded an opportunity to dispute the particulars of that report. Rather, he suggests that his liberty interest in early release is of sufficient magnitude that, regardless of the adequacy of the administrative process, due process mandates direct judicial review.

Assuming, without deciding, that petitioner has some constitutionally cognizable interest in having any postponement of his release date conform to ORS 144.125, we are unpersuaded that such an interest compels direct judicial review of Board deferral decisions. Petitioner has advanced no plausible reason why existing administrative procedures are inadequate to protect that purported interest. Moreover, in the event the Board fails to conform to those procedures or acts unconstitutionally, all means of judicial redress except direct review remain available. *Former* ORS 144.335(2)(e)(A) does not offend due process or abridge any constitutionally guaranteed right to a remedy.

*Former* ORS 144.335(2)(e)(A) is constitutional. That statute bars review of the petition. Accordingly, the motion to dismiss is allowed.

Petition for judicial review dismissed.