On respondent's petition for reconsideration filed September 20, 2000; resubmitted en banc February 7, reconsideration allowed; former opinion (169 Or App 216, 9 P3d 719 (2000)) and disposition withdrawn; affirmed April 25, 2001

## GEORGE F. HAMEL,
*Appellant,*

*v.*

## Dan JOHNSON,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

(97-05-28838M; CA A100349)

25 P3d 314

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and David J. Amesbury, Assistant Attorney General, for petition.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, and Brewer, Judges.

DEITS, C. J.

Brewer, J., concurring.

Edmonds, J., dissenting.

Armstrong, J., dissenting.

**DEITS, C. J.**

Defendant, Superintendent of Snake River Correctional Institution, petitions for reconsideration of our opinion in *Hamel v. Johnson*, 169 Or App 216, 9 P3d 719 (2000). Defendant asserts that we erroneously framed the issue as whether "plaintiff satisfied his burden of proving by a preponderance of the evidence that the order * * * postponing his May 27, 1997, release date was not supported by substantial evidence[.]" *Id.* at 221. Defendant argues that "substantial evidence" is not the proper standard by which the trial court was required to evaluate plaintiff's claim. For the reasons explained below, we agree with defendant that we erred in our previous opinion. Accordingly, we allow reconsideration, withdraw our former opinion and disposition, and affirm the decision of the trial court.

In this case, plaintiff petitioned for a writ of habeas corpus, asserting that he was entitled to release on parole from the institution in which he was incarcerated. Plaintiff contended that the Board erroneously postponed his parole release from 1997 to 1999 based on its finding that plaintiff suffered a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community[.]" *Hamel*, 169 Or App at 219 (quoting ORS 144.125(3) (1991)). Plaintiff made several arguments, developed in his pleadings and in his memorandum of law in support of his petition. First, he alleged that the Board purported to apply the law in effect at the time of his crimes, but did not, in fact, do so, thus violating the *ex post facto* provisions of the state and federal constitutions. Second, plaintiff asserted that the Board lacked authority to deny him parole because no psychological report diagnosed him with a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. Plaintiff acknowledged that the Board had discretionary power to determine whether an inmate had a present severe emotional disturbance such as to constitute a danger to the health and safety of the community, but argued that, as a matter of law, that finding must be based solely on a psychological report and that, if a psychological report did not specifically indicate

that an inmate suffered from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, then the Board's decision exceeded its discretionary powers. Although plaintiff did not cite specific constitutional authority for that argument, he did cite the case of *Anderson v. Alexander*, 191 Or 409, 229 P2d 633, 230 P2d 770 (1951), in support of his argument.

The trial court issued a memorandum opinion concluding that the Board applied the law in effect at the time of plaintiff's crimes. The court further stated that ORS 144.125(3) (1991) permitted the Board to reach an independent finding of a severe emotional disturbance constituting a danger to the health or safety of the community by considering information other than the psychiatric or psychological report. The court explicitly rejected plaintiff's argument that the Board could rely only on a psychological report that made a specific diagnosis of "severe emotional disturbance." The court concluded, in light of its interpretation of ORS 144.125(3) (1991), that plaintiff had failed to allege sufficient facts to support his argument that the Board's decision was based on insufficient evidence.

On appeal, plaintiff claimed that "[t]he trial court erred when it found sufficient evidence in the record to support the Board of Parole's finding of present severe emotional disturbance constituting a danger to the community." In response, the state argued first that plaintiff had not sufficiently alleged any challenge to the sufficiency of the evidence to support the Board's decision, and second, that evidence in the record supported the Board's decision, in light of this court's holding in *Weidner v. Armenakis*, 154 Or App 12, 959 P2d 623, *withdrawn by order* July 13, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den* 328 Or 40 (1998). Neither party made any argument as to whether "substantial evidence" supported the Board's decision. Nonetheless, our opinion indicated that the trial court erred in dismissing plaintiff's petition on the ground that the Board's decision "was not supported by substantial evidence[.]" *Hamel*, 169 Or App at 221.

Defendant urges us to reconsider our decision on the ground that our *sua sponte* introduction of a "substantial

evidence" standard into the legal analysis was erroneous. Defendant argues that, to the extent that sufficiency of the evidence arguments are cognizable in habeas corpus proceedings, the proper standard is whether there is "some evidence" or "any evidence" to support the Board's decision. Defendant points out that there is significant difference between those standards:

> "Constitutional due process is satisfied by an even lower standard [than 'substantial evidence' as defined in ORS 183.482], *viz.,* if there is any evidence in the record that could support the conclusion reached by a disciplinary board. *See Superintendent v. Hill,* 472 US 445, 454-56, 105 S Ct 2768, 86 L Ed 2d 356 (1985)." *Snow v. OSP,* 308 Or 259, 268, 780 P2d 215 (1989).

We agree with defendant that the standards are not interchangeable. The question is which, if either, is the applicable standard here.

Before 1993, orders of the Board of Parole and Post-Prison Supervision concerning parole release dates were subject to direct review in this court in essentially the same manner as were many administrative decisions; this court could set aside or remand such an order upon a finding that the order was "not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8).[1] *See, e.g., Raridon v. Board of Parole,* 104 Or App 307, 311, 801 P2d 842 (1990) (conducting "substantial evidence" review of Board order concerning parole release date). However, in 1993, the legislature specifically determined that review of this type of decision under the procedures for review of Board administrative orders was not appropriate, and it enacted restrictions on direct appellate review of orders that postpone parole release based on a psychological diagnosis under ORS 144.125(3) (1991). *See generally Shelby v. Board of Parole,* 140 Or App 102, 105-08, 915 P2d 414, *rev den* 324 Or 18

---

[1] ORS 144.335(3) (1991) incorporated by reference the "substantial evidence" review provisions of ORS 183.482(8).

(1996) (describing history of legislation and holding that legislation barred direct review of such Board orders, but not other forms of review such as special writ proceedings).

Following that change in the law, Board orders deferring parole release dates based on psychological evaluations were challenged by way of petitions for writs of habeas corpus. In *Meadows v. Schiedler*, 143 Or App 213, 924 P2d 314 (1996), a habeas corpus plaintiff made an *ex post facto* challenge to the Board's application of a version of ORS 144.125 that was not in effect at the time of the inmate's crime. In *Meadows*, the trial court dismissed the action *sua sponte*. We held that the trial court had erred because plaintiff had stated a cognizable claim, and we remanded to give plaintiff an opportunity to prove his claim that the Board had applied the wrong version of the statute. *Id.* at 220. We went on to note that the plaintiff was alleging that the challenged order was "not supported by substantial evidence." Regarding that claim, we stated:

> "That allegation, in essence, asks the trial court itself to assess the record and evidence in the light of the former statutory standard and to order release. Habeas corpus is available to challenge the action of an administrative body if it acts beyond its statutory powers. *Anderson v. Alexander*, 191 Or 409, 431, 229 P2d 633, 230 P2d 770 (1951). The action challenged by plaintiff here is the Board's application of the 1993 version of ORS 144.125(3). Whether the facts support a postponement under the former version of ORS 144.125(3) is a determination for the Board, not the habeas corpus court.[6]

---

"[6] In so stating, we do not mean to imply that habeas corpus is not available to challenge a release decision by the Board that rests on *legally* insufficient evidence. Rather, it is not the habeas corpus court's function to engage in either an initial or subsequent *weighing* of evidence." *Id.* at 220-21 (emphasis in original).

Under *Meadows*, it is clear that the habeas corpus court is not to assess whether the Board's order was supported by substantial evidence by weighing or reweighing the evidence before the Board. Rather, the habeas corpus court is to determine whether, based on the evidence before it, the

Board's decision rests on legally insufficient evidence. As we recognized in *Meadows*, however, "legally insufficient evidence" means something different in the context of habeas corpus than it does in APA-style administrative review for substantial evidence. In *Anderson*, 191 Or at 431, cited by this court in *Meadows*, the court stated, in the context of review of an administrative decision to revoke parole, that a habeas corpus plaintiff

> "may always challenge the action of the administrative body if it acts beyond its statutory powers, or fraudulently, corruptly, or on mere personal caprice, or in the absence of *any information*[.]" (Emphasis added.)

As noted above, plaintiff relied on the *Anderson* case in the trial court in support of his argument that the Board's decision exceeded its discretionary authority. Although neither plaintiff nor the *Anderson* case itself cite explicit constitutional authority for the proposition that habeas corpus relief is available if an agency exceeds its statutory authority or acts in the absence of any information in making a parole release decision, we agree with defendant that the Due Process Clause of the Fourteenth Amendment to the United States Constitution provides the basis for that proposition.

■■ Habeas corpus relief is available to challenge the authority for, or the conditions of, confinement. ORS 34.360; ORS 34.362. A person serving an indeterminate prison sentence who is paroled has not completed his or her sentence; rather, "parole is in the nature of a grant of partial liberty or a lessening of restrictions to a convicted prisoner." *Anderson*, 191 Or at 431 (quoting *McCoy v. Harris*, 108 Ut 407, 160 P2d 721 (1945)). Nonetheless, statutory entitlement to parole may, under some circumstances, create a liberty interest that is cognizable for purposes of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 99 S Ct 2100, 60 L Ed 2d 668 (1979).[2] Assuming for purposes of this

---

[2] In *Greenholtz*, the Court held that, although there is no constitutional right to be released from prison before the expiration of one's sentence, a state statute that binds a Parole Board to release an inmate under specific circumstances may create a liberty interest protected by due process guarantees. 442 US at 7, 11-12. *But see Sandin v. Conner*, 515 US 472, 115 S Ct 2293, 132 L Ed 2d 418 (1995) (limiting holding of *Greenholtz*).

discussion that ORS 144.125 (1991) creates such a liberty interest that an inmate will be paroled on his or her projected parole release date in the absence of specific findings by the Board, the question is what standard a court is to use to evaluate the propriety of the Board's decision, in the absence of a statutory standard that governs review of such decisions.[3]

■    Defendant is correct that the case of *Superintendent v. Hill*, 472 US 445, 105 S Ct 2768, 86 L Ed 2d 356 (1985), answers that question. In *Hill*, a prison disciplinary board found that several inmates had violated prison rules and, pursuant to statutory authority, reduced the amount of "good time credits" or sentence reductions to which the inmates were entitled. 472 US at 447. The Court framed the issue before it as "whether findings of a prison disciplinary board that result in the loss of good time credits must be supported by a certain amount of evidence in order to satisfy due process." *Id.* at 453. The Court concluded that revocation of good time credits did not comport with the minimum requirements of procedural due process "unless the findings of the prison disciplinary board are supported by *some evidence* in the record." *Id.* at 454 (emphasis added). The Court stated:

"Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens. * * * Because the written statement mandated by *Wolff* [*v. McDonnell*, 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974)] requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." *Id.* at 455.

---

[3] As noted above, this court previously reviewed such decisions for "substantial evidence" on direct review of the Board's orders based on specific statutory authority. *See* 173 Or App at 452 n 1. In the absence of a statutory directive, however, there exists no basis for our conclusion in our previous opinion that the habeas corpus court was required to determine whether the Board's decision was "supported by substantial evidence." *Hamel*, 169 Or App at 221.

Finally, the Court made explicit what this type of review for "some evidence" would entail:

"Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

That standard is essentially the same as the one described in *Meadows*, 143 Or App at 221, in which we indicated that the court would not entertain "substantial evidence" argument in habeas corpus cases, and with *Anderson*, 191 Or at 431, which indicated that an inmate may challenge the action of an agency on the ground that it acted in the absence of any information. In sum, in *Meadows*, we suggested, but did not make explicit, that although "substantial evidence" review of Board orders is not possible in a habeas corpus case, challenges to the sufficiency of the evidence to support Board orders may be entertained. We now clarify that the standard by which a court in habeas corpus is to evaluate the evidence in support of a Board order is whether "some evidence" supports the Board's conclusion.

The analysis in Judge Armstrong's dissent, based entirely on his interpretation of OAR 255-030-0032, is unsound in various respects. 173 Or App at 471-80. It is premised on the notion that plaintiff is entitled to habeas corpus relief on the ground that the Board failed to follow the dictates of OAR 255-030-0032(3) that "substantial evidence shall support Board orders. Substantial evidence is found when the record, viewed as a whole, would permit a reasonable person to make a particular finding." As an initial matter, we note that plaintiff has never alleged that he is entitled to habeas corpus relief on the ground that the Board failed to follow one of its rules. In fact, neither plaintiff nor defendant has even *cited* OAR 255-030-0032(3) in this court, or in the trial court, much less argued that it is in any way applicable to the issues presented here. That is not surprising because, even assuming that a habeas corpus court could conduct a substantial evidence review, *but see Meadows*, 143 Or App at 221, such a review would require consideration of "the record,

viewed as a whole." Plaintiff has failed to allege that the record, viewed as a whole, did not support the Board's decision. In sum, the issue that the dissents would have us decide has not been argued in this case.

Moreover, even if we were to address whether OAR 255-030-0032(3) was applicable to the issue presented here, we would be hard pressed to conclude, as do the dissents, that this rule applies to exit interviews as well as to initial prison term hearings. Division 30 of the rules explicitly applies only to "prison term hearing procedure[s]." "Prison term hearing" is defined as "[t]he hearing at which the Board establishes an inmate's prison term and initial parole release date." OAR 255-005-0005(42). The issue in this case is deferral of parole release based on a finding of severe emotional disturbance, and such decisions are made pursuant to Division 60 of the Board's rules, which pertains to "release to post-prison supervision or parole and exit interviews."

Judge Armstrong's dissent attempts to overcome this problem by noting that OAR 255-060-0006(2) incorporates the "procedures for *records* * * * outlined in Division 15 and 30" into the exit interview process and concluding that the Board intended also to incorporate the "substantial evidence" rule from Division 30. 173 Or App at 475 (emphasis added). Judge Armstrong's dissent accomplishes this essentially by reasoning that "records" is the plural of "record," that an evidentiary rule involves the development of the "record," and "procedures for records," therefore, really means "quantum of evidence required to support a decision." That is a stretch, to say the least, particularly in light of the fact that Division 15, to which OAR 255-060-0006(2) refers, concerns "request[s] for Board records of files."

■ We now turn to the application of the proper standard in the present case. We first note that the state is correct that, in the trial court, plaintiff did not make any type of general challenge to the sufficiency of the evidence, but rather made the assertions that, as a matter of law, the Board erred in considering information outside of the psychological evaluation, and that the psychological evaluation itself needed to contain a diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the

community. The trial court correctly rejected those arguments, *see Weidner*, 154 Or App at 19-20, and, therefore, correctly concluded that plaintiff did not plead sufficient facts to entitle him to relief. As noted above, plaintiff changed his argument on appeal, challenging for the first time the sufficiency of the evidence to support the Board's decision. Normally, we would not reach the merits of an argument presented for the first time on appeal. However, in the present case, we did address the merits of plaintiff's sufficiency of the evidence argument on appeal, inadvertently introducing an incorrect standard of review. *Hamel*, 169 Or App at 221. Therefore, we must again address the merits of plaintiff's sufficiency of the evidence argument in order to correct our previous error.

Applying the "some evidence" standard in the present case, it is clear that we erred in our evaluation of the record in our previous opinion. In support of his habeas claim, plaintiff submitted as evidence before the trial court the psychological report on which the Board relied, which is discussed at length in our previous opinion. *Hamel*, 169 Or App at 219-21. He also presented evidence about his lack of criminal history and lack of significant prison discipline. He presented evidence that he had completed significant amounts of mental health treatment in the penitentiary. Defendant, in response, relied solely on the psychological evaluation discussed in our previous opinion to support the Board's conclusion that plaintiff suffers from a "present severe emotional disturbance that constitutes a danger to the health or the safety of the community." The crimes for which plaintiff is imprisoned involved sodomy of two children, and the psychologist who prepared the evaluation stated that plaintiff had "*begun* to take responsibility for his crime," but felt that plaintiff did "not entirely recognize his potential for reoffense." (Emphasis added.) The evaluation on which the Board relied in support of its conclusion indicates that plaintiff has a personality disorder that has narcissistic and passive/aggressive features. The psychologist described individuals with psychological profiles similar to plaintiff's profile as: self-centered, selfish, bitter, angry, hostile, suspicious,

and tending to blame others for life's problems. The psychologist also stated that "there certainly is some risk for reoffense." Given this information, we conclude that some evidence provided by the psychological evaluation supports the Board's determination that plaintiff continues to suffer from a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community." ORS 144.125(3) (1991).

Reconsideration allowed; former opinion and disposition withdrawn; affirmed.

**BREWER, J.,** concurring.

I agree with the majority that the appropriate standard for habeas corpus review of Board of Parole and Post Prison Supervision decisions made under ORS 144.125(3) (1991) is the "some evidence" standard required by the Fourteenth Amendment. I also agree with the majority that the Board's administrative rule, OAR 255-030-0032, does not require the use of a different standard. Finally, I agree that the Board's decision in this case does pass muster under the "some evidence" test. I write separately only to emphasize that this court did not, in *Meadows v. Schiedler*, 143 Or App 213, 924 P2d 314 (1996), reject review for substantial evidence as the applicable standard of review of such decisions. I agree with Judge Armstrong that *Meadows* should not be so understood. Nevertheless, because the majority has properly reasoned its way through this problem, I concur.

Haselton, J., joins in this concurrence.

**EDMONDS, J.,** dissenting.

I join with Judge Armstrong's cogent discussion of how the Board's own administrative rules circumscribe the legality of its decisions. I write separately to discuss my understanding as to how those rules operate within the framework of the applicable statutes and to furnish perspective to their application to this case.

Petitioner argues that "the trial court erred when it found sufficient evidence in the record to support the Board of Parole's finding of present, severe emotional disturbance constituting a danger to the community." ORS 144.125 (1987) is

the substantive statute that governs petitioner's entitlement to release. It requires release on parole unless the Board makes valid findings regarding one of the exceptions in the statute. One of those exceptions is when a prisoner suffers from a present, severe emotional disturbance. As we held in *Hamel v. Johnson,* 169 Or App 216, 9 P3d 719 (2000), there is not substantial evidence here to support a finding that petitioner presently suffers from a "severe" emotional disturbance. Petitioner has completed treatment programs for sex offenders and, in the opinion of the examining psychologist, has benefitted from those programs. The examining psychologist recommended petitioner's release on parole, noting

> " '* * * He was slow to acknowledge his responsibility for the crime. Over time, however, it is this examiner's impression that [petitioner] has begun to take responsibility for his crime and participate in sex offender day treatment. He is cognizant of the negative effects of his behavior on his victims, even though he does not entirely recognize his potential for reoffense. He is unhappy and anxious.

> " 'Even though [petitioner's] basic personality structure does not appear to have changed since a previous examination, it is notable that he does acknowledge that he has harmed his victims. He has taken the initiative to develop potential referral sources in Florida, if he were to be paroled.

> " 'In sum, it is this examiner's impression that [petitioner's] acknowledgment of his harm to his victims mitigates significantly the short sightedness associated with his personality disorder. Since he has been in prison no other victims have been discovered. He has cooperated with and benefited from his treatment opportunities. Although there certainly is some risk for reoffense, it is this examiner's impression that [petitioner's] parole plan and current benefit from treatment combine to minimize the risk to the community, if he is to be paroled.' " *Hamel,* 169 Or App at 220.

On reconsideration, the majority focuses on the preface of the examiner's statement that there is "potential for reoffense," 173 Or App at 458, and places its reliance on the diagnosis of a personality disorder and its general characteristics without taking into account the psychologist's finding

that "[Petitioner's] acknowledgment of his harm to his victims mitigates significantly the short sightedness associated with his personality disorder." *Hamel*, 169 Or App at 220. It also fails to mention that petitioner is presently "cognizant of the negative efforts of his behavior on his victims." *Id*. On this basis, the majority concludes that there is "some evidence," 173 Or App at 459, to support the Board's finding that petitioner continues to suffer from a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community."

The issue, of course, is the standard by which we review the Board's ultimate finding. The majority says that "[d]efendant is correct that the case of *Superintendent v. Hill*, [472 US 445, 105 S Ct 2768, 86 L Ed 2d 356 (1985),] answers that question." 173 Or App at 455. But, as Judge Armstrong correctly points out, *Hill* is a federal due process case and imposes only a minimum standard on the Board. Rather, we must look elsewhere to discern the legislature's intent about how the Board's decisions are to be reviewed by courts.

Our analysis must begin with the statutes that circumscribe the Board's authority as well as the administrative rules enacted by the Board to carry out the legislature's intent. Our task is to discern the intent of the legislature, even if it did not contemplate this particular problem. That inquiry returns us to the language of ORS 34.310, the statute under which petitioner seeks relief. It authorizes a court "to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom." The key word in that statute is the word "illegal." It means "contrary or violating a law or rule[.]" *Websters Third New Int'l Dictionary*, 1126 (unabridged ed 1993). By definition, relief under ORS 34.310 is not confined to inquiries of a constitutional nature, and the majority's implicit conclusion to the contrary is error. An inquiry into the "legality" of the Board's action necessarily entails inquiry into the statutes or rules that regulate the Board's exercise of its authority. ORS 144.050 says as much.[1]

---

[1] ORS 144.050 provides:

"Subject to applicable laws, the State Board of Parole and Post-Prison Supervision may authorize any inmate, who is committed to the legal and physical custody of the Department of Corrections for an offense committed prior to November 1, 1989, to go upon parole subject to being arrested and

The Board's authority to grant parole is expressly subject to statutes like ORS 144.125, which require it to release a prisoner on parole unless the statute's criteria for denial are met.

It follows that the legislature has delegated to the Board the authority to determine by rule what evidentiary standards it will apply in exercising its authority under ORS 144.125. The Board makes its parole release decisions under the statute pursuant to OAR chapter 255, division 60. Significant to the majority's position, the Board has not said in Division 60 that it will render its decisions about release on parole based on "some evidence." That leaves two possibilities. Either the Board has not said by rule what evidentiary standards it will use to make its release decisions, or it intends that OAR 255-030-0032(3)'s standard of "[r]eliable, probative and substantial evidence" be applicable to its parole release decisions. Beyond the evidentiary standard that the Board fails to impose or does impose on itself is the question of our standard of review as to the sufficiency of the evidence to support its conclusion of a present, severe emotional disturbance.

I am persuaded by Judge Armstrong's analysis that the only logical answer can be that the Board intended OAR 255-030-0032(3) to apply to its release decisions and that we should hold the Board answerable to that standard as part of our own review. But even if he is incorrect, it is error to impose a "some evidence" or "modicum of evidence" standard as our standard of review in light of the statutes at work in this case. At best, the majority's argument leaves this case in a position where the Board has not promulgated an evidentiary standard for itself in the making of parole release decisions. However, that does not alter our need to employ a standard of review. ORS 34.310 entitles a petitioner who loses a ORS 144.125(3) release decision before the Board to test the legality of the Board's decision, which in turn requires us to establish standards of review. Under ORS 34.310, we review the Board's decision denying release under the exceptions to ORS 144.125(3) for errors of law. One of the ways in which

detained under written order of the board or as provided in ORS 144.350. The state board may establish rules applicable to parole."

the legality of administrative decisions are subjected to judicial review for errors of law is to test the sufficiency of the evidence on which the decisions are based. If Judge Armstrong's analysis is incorrect, then, nevertheless, petitioner's challenge to the sufficiency of the evidence in this case requires us to establish a standard of review in order to assess the legality of the Board's decision.

As framed by the opinions in this case, we could adopt either a "substantial evidence" or a "modicum of evidence" standard. But, as Judge Armstrong points out, the typical standard of judicial review of the sufficiency of the evidence in an administrative law case is for substantial evidence, the same standard that the Board applies to itself in other decisions authorized by OAR chapter 255. Given the universal use of that standard in Oregon administrative law, it is reasonably inferrable that when the legislature enacted ORS 144.125(3) to be implemented by the Board, it contemplated that a typical standard of review, as distinguished from a constitutional standard, would be exercised by the appellate courts on judicial review of parole release decisions. On the other hand, the majority's adoption of the "modicum of evidence" standard announced in *Hill* has no precedent in the review of the administrative decisions in this state and leads to an incongruous result.

The "modicum of evidence" standard was imposed by the United States Supreme Court in the specific context of a Fourteenth Amendment challenge to a Massachusetts statute regarding "good time" credits that reduced the term of imprisonment. In contrast, the scope of ORS 34.310, under which petitioner's claim is brought, is much broader than that of the Massachusetts statute. It permits the bringing of more claims than just those that challenge a term of imprisonment. Under the statute, a petitioner may test the legality of the imprisonment, whether his freedom is in issue or not. As our Supreme Court said in *Penrod/Brown v. Cupp*, 283 Or 21, 28-29, 581 P2d 934 (1978), the statute is not confined to the case of further imprisonment or restraint of the prisoner's person that would be unlawful, if not justified to the court. Rather, the statute also provides a remedy when a petition alleges further restraints beyond the judgment of conviction

or other like deprivations of a prisoner's legal rights of a kind that, if true, would require immediate judicial scrutiny.[2]

I presume that the majority would agree that, whatever our standard of review has been under ORS 34.310, that standard ought to continue to be uniform and to coincide with the legislature's intent as to the various classifications of the claims of illegal restraint brought under it. But that will not be the result under the majority's decision. By applying only a "modicum of evidence" standard of review to the determination of this kind of case, the majority creates a piecemeal standard of review and opens the door to the Board's use of evidence that lacks reliability and probative value evidence that a reasonable person would not rely on. Given the mandatory release on parole provisions of ORS 144.125(3), it is hard to imagine that the legislature contemplated that kind of result. The majority's result also forecloses review for legal error of those nonconstitutional cases that the legislature intended to be otherwise cognizable under ORS 34.310. The "substantial evidence" standard offers none of these problems. If the question of the proper standard of review is not dictated by the Board's own rules, then we should choose to employ a standard of "substantial evidence," whether the Board uses that standard in its parole release decisions or not, to afford substantial justice to all the parties.

With these additional comments, I join in Judge Armstrong's dissent.

## ARMSTRONG, J., dissenting.

I dissent from the majority's conclusion that we applied an improper standard of review in our prior opinion in this case, *Hamel v. Johnson*, 169 Or App 216, 9 P3d 719 (2000) (*Hamel II*). In *Hamel II*, we conducted a review for substantial evidence to determine whether there was legally sufficient evidence to support the Parole Board's finding under ORS 144.125(3) that plaintiff suffered from a severe emotional disturbance that warranted postponement of his

---

[2] Penrod's petition alleged that he had been unlawfully placed in segregation, denied reading material, denied medical care, and had been beaten and threatened by prison personnel. Brown's petition alleged that prison personnel had confiscated a number of his books.

release from prison. Defendant seeks reconsideration of our decision, arguing that the review conducted by a habeas corpus court of a Board decision to postpone an inmate's release is limited to a review to determine whether the decision is supported by any evidence. The majority mistakenly accepts the Board's argument on that point.

The majority reaches its erroneous conclusion by attempting to distinguish between a review for legally sufficient evidence, which, it contends, is the proper standard of review, and a review for substantial evidence. What the majority fails to recognize is that the two standards of review are the same in this case.

Several statutes provide the analytical framework for this case. First, the habeas corpus statute provides that

"[e]very person imprisoned or otherwise restrained of liberty, within this state, except in the cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom."

ORS 34.310. The habeas corpus statute thus establishes that an inmate's entitlement to relief under it depends on the laws that govern the legality of his imprisonment.

The second statute that governs our analysis is ORS 144.125, which is the statute that governs the legality of plaintiff's imprisonment.[1] That statute permits the Board to postpone an inmate's scheduled release on parole under specified circumstances. The Supreme Court construed that statute in *Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000) (*Hamel I*), and held that a postponement under it must be based on a valid finding that the inmate meets one of the

---

[1] For purposes of this case, the relevant version of ORS 144.125 is the one that existed in 1987. It provided, in relevant part:

"(2) The board shall postpone a prisoner's scheduled release date if it finds, after a hearing, that the prisoner engaged in serious misconduct during confinement. * * *

"(3) If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date."

All references to that statute in this opinion are to the 1987 version of it.

statute's postponement criteria. Among the findings that meet those criteria is the finding that the Board made here: that the inmate suffers from a severe emotional disturbance that constitutes a danger to the health or safety of the community. ORS 144.125(3); *see Hamel I*, 330 Or at 187. Thus, *Hamel I* establishes that the Board lacks the power to postpone an inmate's release if it is unable to make the finding required by ORS 144.125.

The third and final statute that provides the framework for our analysis is ORS 144.050, which authorizes the Board to grant parole "[s]ubject to the applicable laws" and to "establish rules applicable to parole."

As noted above, the Board entered an order that made the required finding under ORS 144.125(3) and postponed plaintiff's release on parole. The question on appeal, therefore, is whether we can uphold that finding under the applicable standard of review or whether the finding is defective and plaintiff's confinement illegal. The lead opinion cites *Meadows v. Schiedler*, 143 Or App 213, 220-21 & n 6, 924 P2d 314 (1996), for the proposition that we already have rejected review for substantial evidence as the applicable standard of review. 173 Or App at 453-54. The lead opinion is wrong. Neither *Meadows* nor any other case has determined that issue.

*Meadows* is a habeas corpus case in which the plaintiff challenged a Parole Board decision under ORS 144.125(3) to postpone his release on parole. Among other things, the plaintiff alleged that the Board had based its postponement decision on a version of ORS 144.125(3) that had been enacted *after* he had committed the crimes for which he had been convicted and that that version of the statute could not be applied to him without violating state and federal constitutional guarantees against the enactment of *ex post facto* laws. The trial court dismissed the habeas corpus petition *sua sponte*, and the plaintiff appealed.

On appeal, we held that a postponement decision under ORS 144.125(3) could be challenged through a writ of habeas corpus and that the Board violated the Oregon Constitution's *ex post facto* clause if it applied the later-enacted version of ORS 144.125(3) to the plaintiff. We then addressed

an issue that we believed would arise on remand, which concerned the relief to be granted if the plaintiff proved that the Board had based its postponement decision on the later-enacted version of the statute. In his petition, the plaintiff had

"alleged that the 'Board's decision is not supported by substantial evidence. The evidence presented clearly supported release.' "

*Meadows*, 143 Or App at 220. We interpreted that allegation to seek from the trial court a factual determination about whether the plaintiff should be released.

We gave the allegation that interpretation because of the hybrid nature of habeas corpus review of a Parole Board postponement decision. Normally, when a court determines that an administrative agency has based its decision on an incorrect understanding of the law, the court remands the decision to the agency to reconsider its decision, including its factual findings, in light of the correct law. Although the court's role in a habeas corpus proceeding is not the same as its role in conducting a judicial review of an agency decision under the Oregon Administrative Procedures Act (APA), we treated the reconsideration principle applicable to judicial review under the APA as applicable to habeas corpus proceedings. Consequently, we held that the decision

"[w]hether the facts support a postponement under the former version of ORS 144.125(3) is a determination for the Board, not the habeas corpus court."

*Id.* at 221 (footnote omitted). However, we viewed the plaintiff's allegation about substantial evidence as an allegation that asked the court to order the plaintiff's release *without* remanding the matter to the Board for its decision. Consequently, we viewed the allegation as one that asked the habeas corpus court to supplant the Board as the factfinder, because that would be the role that a court would play in a judicial review proceeding if it ordered an administrative agency to act without giving the agency the opportunity to reconsider its decision and to find the relevant facts in light of a corrected understanding of the applicable law.

Frankly, it is impossible for me to conceive how *Meadows* can be understood to have done what the lead opinion claims that it did. The plaintiff had alleged in *Meadows* that the Board had not made a decision under the correct version of ORS 144.125(3). If the plaintiff proved that allegation on remand, it would follow that the Board had not made the finding that it had to make under the statute in order to postpone the plaintiff's release. Consequently, the effect of proving that allegation would be that there would be *no* Board order to review on any basis, whether for any evidence, substantial evidence, or any other evidentiary standard.

In that light, we interpreted the plaintiff's allegation that included a reference to substantial evidence as an allegation that "in essence" sought to require the court to perform the factfinding role assigned by the relevant statutes to the Board. In other words, we treated the allegation as one that *did not seek* a review for substantial evidence.[2] A review for substantial evidence is the review undertaken under appropriate circumstances to determine the legal sufficiency of evidence to support an administrative finding. Given the posture of the case on remand, no review of *any* kind could take place. The point of the *Meadows* discussion that the lead opinion quotes completely out of context was simply to make clear that the proper course for the trial court on remand was to remand the case to the Board for *it* to perform *its* factfinding role *if* the plaintiff proved that the Board had applied the wrong version of the statute. *Meadows*, 143 Or App at 220-21. In that event, there would be no assurance that the Board would, or could, make the necessary finding. Only if it did and the plaintiff again sought habeas corpus review of *that* decision would the standard for legally sufficient evidence have to be determined. Had we actually addressed *that* issue

---

[2] In another context, the allegation in the plaintiff's petition *could be* understood to seek review of the Board's decision for substantial evidence. However, in the context of *Meadows*, it could not have *that* effect, because there was no Board decision to review for substantial evidence. Consequently, we interpreted the allegation to seek something *other than* a review of the Board's decision for substantial evidence. Rather, we interpreted it to require the habeas corpus court to supplant the Board as a factfinder, which is the role that we rejected for that court in *Meadows*.

in *Meadows*, as the majority claims that we did, our statement would have been the baldest of *dicta* on a hypothetical issue that might never arise in the case. We did not do that.

In summary, we treated the plaintiff's allegations in *Meadows* about the adequacy of the evidence to support a postponement decision as seeking to impose a factfinding role on the court about whether, in light of the record before the Board, the plaintiff should be released. We rejected that role for the court. We did not decide, as the lead opinion contends, to reject substantial evidence as the standard for what constitutes evidence that is legally sufficient for the Board to act.

That we rejected the former and not the latter is confirmed by what we said in footnote 6 in *Meadows*. Footnote 6 appears at the end of the sentence in which we explained that it is the *Board* that must decide, as a factual matter, whether the facts in the record support postponement of the plaintiff's release under the correct version of ORS 144.125(3). We said in the footnote:

> "In so stating, we do not mean to imply that habeas corpus is not available to challenge a release decision by the Board that rests on *legally* insufficient evidence. Rather, it is not the habeas corpus court's function to engage in either an initial or subsequent *weighing* of evidence."

*Meadows*, 143 Or App at 221 n 6 (emphasis in original). The footnote makes clear that the discussion in the text is intended to reject a factfinding role for the habeas corpus court about whether the Board record supports the plaintiff's release. We said that the habeas corpus court can be required to determine the legal sufficiency of the evidence in the record that supports a postponement decision, but it cannot weigh that evidence. Our case law makes it abundantly clear that a review for substantial evidence is a review for the legal sufficiency of the evidence to support an agency decision; it does *not* involve the weighing of evidence.[3] Our rejection in

---

[3] *See, e.g., Tigard Sand and Gravel, Inc. v. Clackamas County*, 151 Or App 16, 18, 949 P2d 1225 (1997), *rev den* 327 Or 83 (1998) (noting that "LUBA does not review local findings *de novo*, nor is it permitted to weigh the evidence independently in conducting its substantial evidence review") (citations and internal quotation marks omitted); *Berwick v. AFSD*, 74 Or App 460, 464, 703 P2d 994, *rev den* 300 Or 332 (1985) ("Although we review agency factual determinations only to decide whether there is substantial evidence to support them, the agency in

footnote 6 of a role for the court in weighing the evidence is not a rejection of substantial evidence review. In fact, the whole point of footnote 6 was *to preserve* for another day the issue of what constitutes legally sufficient evidence in a habeas corpus review of a Board postponement decision, not, as the lead opinion sees it, to confirm that we had decided the issue.

If the lead opinion were correct that *Meadows* had rejected review for substantial evidence as the proper standard to use to determine the legal sufficiency of evidence to support a Board postponement decision under ORS 144.125(3) and that we should adhere to that decision, then I would agree that the standard for legally sufficient evidence for a Board decision under ORS 144.125(3) would be the one imposed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is that there must be some evidence in the Board record to support its decision. That is the standard that a state agency must meet when making a decision such as the postponement decision at issue here *if* there is no more rigorous standard imposed on the agency by its rules, by the relevant state statutes, by the state constitution, or by federal statutes.[4] The other cases cited by the lead opinion all involved situations in which the Fourteenth Amendment was the sole source of any limitation on the relevant governmental action, so they add nothing to our case because, as I will explain, the Board's postponement decision is governed by Board rules that

making its decision weighs all the evidence in the record * * *.") (citations omitted); *Gresham Tchrs. v. Gresham Gr. Sch.*, 52 Or App 881, 893, 630 P2d 1304 (1981) ("Our function on review is not to weigh the evidence but only to determine whether the agency's conclusion is supported by substantial evidence.") (citations omitted); *Dach v. Employment Division*, 32 Or App 433, 436, 574 P2d 684 (1978) ("We only review for errors of law and substantial evidence. In that capacity it is sufficient to say that we do not weigh the evidence."); *Christian Retreat Center v. Comm. for Wash. Co.*, 28 Or App 673, 679, 560 P2d 1100, *rev den* 278 Or 553 (1977) ("Where * * * it is alleged that the findings of the lower tribunal are not supported by substantial evidence, the inquiry * * * is the limited one of whether the record contains evidence which a reasonable mind might accept as adequate to support the findings challenged. Where the record includes conflicting believable evidence, that conflict is to be resolved not by this court but by the lower tribunal[,] which may choose to weigh the evidence as it sees fit.") (citations omitted).

[4] In other words, the Fourteenth Amendment establishes the minimum evidentiary standard that state agencies must meet to take the kind of action that is at issue in this case.

impose a more rigorous evidentiary standard than that required by the Fourteenth Amendment. That discussion will also establish that we should overrule *Meadows* if it established the principle that the lead opinion contends that it did.

It is axiomatic that administrative agencies must follow their own rules. *See, e.g.*, *Albertson's, Inc. v. Bureau of Labor and Industries*, 128 Or App 97, 101, 874 P2d 1352 (1994). Here, the Board has adopted a rule that requires its findings to be based on substantial evidence in the whole record. That rule is OAR 255-030-0032(3), which provides that

> "[r]eliable, probative and substantial evidence shall support Board orders. Substantial evidence is found when the record, viewed as a whole, would permit a reasonable person to make a particular finding."

OAR 255-030-0032(3).[5] The majority disputes that the rule applies to Board decisions under ORS 144.125(3) to postpone the release of prisoners on parole. I will explain why the majority is wrong.

OAR 255-030-032(3) appears in Division 30 of the Board's rules, which is a division entitled "Prison Term Hearing Procedure." A "Prison Term Hearing" is defined in the Board's rules as

> "[t]he hearing at which the Board establishes an inmate's prison term and initial parole release date."

OAR 255-005-0005(42). A decision under ORS 144.125(3) to postpone an inmate's release on parole beyond the inmate's initial parole release date is *not* a decision that is made in a prison term hearing, so, at first blush, and according to the

---

[5] The rule is equivalent to ORS 183.450(5) of the APA, which provides:

"No sanction shall be imposed or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party, and as supported by, and in accordance with, reliable, probative and substantial evidence."

The Board is exempt from most provisions of the APA. *See* ORS 183.315. The effect of the rule is to require the Board to meet the evidentiary standard embodied in the rule notwithstanding the exemption that ORS 183.315 gives the Board from the APA version of that standard. ORS 144.050 gave the Board the authority to adopt the rule. For convenience, unless otherwise noted, I quote the current version of the administrative rules, except when there is a significant difference between the 1997 version, which was in effect when the Board issued its decision to postpone plaintiff's release, and the current version.

majority, OAR 255-030-032(3) does not apply to the post-ponement decision at issue here. If that were true, then OAR 255-030-0032(3) would *not* establish an evidentiary standard that the Board had to meet to postpone plaintiff's release on parole. However, a review of the Board's rules as a whole, particularly in light of their evolution, establishes that OAR 255-030-0032(3) *does* apply to a Board decision under ORS 144.125(3) to postpone an inmate's release on parole.

Postponement decisions under ORS 144.125(3) are made in exit interviews, which generally are governed by Division 60 of the Board's rules. OAR 255-060-0006(2) of that division provides that

> "[t]he procedures for records, disclosure and notice outlined in Division 15 and 30 shall govern exit interviews."

Consequently, although a postponement decision under ORS 144.125(3) is *not* made in a prison term hearing, which is governed by Division 30 of the Board's rules, the rules in Division 30 that deal with records, disclosure and notice *do* apply to exit interviews, which are the proceedings by which the Board postpones an inmate's release on parole under ORS 144.125(3).

OAR 255-030-0032 is a rule in Division 30 that applies to the record in hearings that are governed by it, which, by operation of OAR 255-060-0006(2), includes exit interviews. It is entitled "Evidence," and it provides:

> "(1)   The presiding chairperson at a Board hearing shall explain the issues for decision, which, in the case of a prison term hearing, are those issues set forth in OAR 255-035-0013.
>
> "(2)   Evidence of a type that reasonably prudent persons would commonly rely upon in the conduct of their serious affairs shall be admissible in Board hearings, including:
>
> "(a)   The information set forth in OAR 255-030-0035;
>
> "(b)   Other relevant evidence concerning the inmate if reasonably available.
>
> "(3)   Reliable, probative and substantial evidence shall support Board orders. Substantial evidence is found when

the record, viewed as a whole, would permit a reasonable person to make a particular finding.

"(4) The Board may exclude evidence if it is:

"(a) Unduly repetitious;

"(b) Not of a type commonly relied upon by reasonably prudent persons in the conduct of their serious affairs;

"(c) Provided by a person, other than a justice system official, without firsthand knowledge of the circumstances of the crime;

"(d) Provided by a person, other than a justice system official, without firsthand knowledge of the character of the inmate;

"(e) Addressing only guilt or innocence; or

"(f) Irrelevant or immaterial to the findings being made at that particular hearing.

"(5) The Board may receive evidence to which the inmate objects. If the presiding chairperson does not make rulings on its admissibility or exclusion during the hearing, the Board shall make findings on the record at the time a final order is issued.

"(6) Erroneous rulings on evidence shall not preclude Board action on the record unless shown to have substantially prejudiced the right of the inmate."

Subsection (3) of that rule establishes the evidentiary standard that the record must meet to permit the Board to make a particular finding in a proceeding governed by the rule. A Board proceeding under ORS 144.125(3) to postpone an inmate's release is such a proceeding, so subsection (3) applies to it.

A number of factors bolster that conclusion. First, subsection (1) of the rule requires the presiding officer at a Board hearing to "explain the issues for decision, which, in the case of a prison term hearing, are those issues set forth in OAR 255-035-0013." OAR 255-030-0032(1). If OAR 255-030-0032 applied *only* to prison term hearings, it would serve no purpose to include a clause in subsection (1) of that rule to distinguish prison term hearings from other hearings. The clause necessarily establishes that the rule applies to prison

term hearings and to hearings *other than* prison term hearings.

Second, a review of the Board's rules establishes that the proceedings to which OAR 255-030-0032 applies other than prison term hearings are personal review proceedings under Division 40 of the Board's rules, proceedings under Division 50 to postpone parole for serious misconduct, *and* exit review proceedings under Division 60. I can identify no other proceedings that could be governed by OAR 255-030-0032 other than the proceedings governed by those divisions and prison term hearings.

I base my conclusion that proceedings under Divisions 40, 50, and 60 are governed by OAR 255-030-0032 on cross-references in those divisions that make some of the provisions of Division 30 applicable to each of them. The phrasing of the cross-references differ somewhat, but the differences do not affect the applicability of OAR 255-030-0032 to proceedings governed by those divisions.

The Division 40 cross-reference rule provides:

> "The notice, disclosure, and record making provisions of Division 30 shall apply to all hearings, and reviews granted under this Division."

OAR 255-040-0035. The Division 50 cross-reference rule provides:

> "When the Board conducts a parole postponement hearing, the following procedure shall apply:
>
> "(a)   The Board shall give the inmate notice of the hearing and its purpose; the provisions of Division 30 as to appearance, disclosure, and record shall apply except:
>
> "(b)   An inmate may not waive his/her right to appear;
>
> "(c)   An inmate may not relitigate facts which the institution hearings officer has found at the disciplinary hearing."

OAR 255-050-0010(1). Finally, the Division 60 cross-reference rule provides:

> "The procedures for records, disclosure and notice outlined in Division 15 and 30 shall govern exit interviews."

OAR 255-060-0006(2).

The Division 40 cross-reference rule makes the "record making provisions of Division 30" applicable to personal review proceedings. As noted above, OAR 255-030-0032 in Division 30 is entitled "Evidence," which would appear to bear on record making in a Division 40 proceeding. In addition, subsection (1) of OAR 255-030-0032 requires the presiding officer to identify the issues to be decided in the proceeding, while subsections (2), (4), and (5) address the admissibility and admission of evidence, subsection (3) identifies the evidentiary standard that must be met in the proceeding to permit the Board to act, and subsection (6) provides that erroneous evidentiary rulings "shall not preclude Board action on the record unless shown to have substantially prejudiced the rights of the inmate." All of the identified subsections appear to relate to "record making," so they too support the proposition that OAR 255-030-0032 as a whole applies to Division 40 proceedings.

The Division 50 cross-reference rule makes the "provisions of Division 30 as to * * * record" applicable to proceedings to postpone parole for serious misconduct. OAR 255-050-0010(1). Although "record" and "record making" are different terms, the above discussion of OAR 255-030-0032 is equally applicable to either term, which means that the rule also applies to Division 50 proceedings.

The Division 60 cross-reference rule makes the "procedures for records * * * outlined in Division 15 and Division 30" applicable to exit interviews, which include proceedings to postpone parole under ORS 144.125(3). OAR 255-060-0006(2). The term "records" is different from "record" and "record making," but, here again, there is no reason to think that the difference in phrasing makes OAR 255-030-0032 any less applicable to exit interviews under Division 60 than it is to proceedings under Division 40 and 50.

A review of the evolution of the rules supports that conclusion in two, distinct ways. The Board adopted the basic rules that are at issue here in 1979. At that time, there were two ways that postponement of parole for serious misconduct or a present severe emotional condition could be presented to

the Board. One was through a recommendation by the Corrections Division to reset an inmate's release date for serious misconduct. The Board could take such an action if, after a hearing, it found that the inmate had engaged in such conduct. *See former* OAR 254-150-010 (1979). Alternatively, if it found in the course of that proceeding that the inmate suffered from a present severe emotional disturbance, it could defer the inmate's release to a specified future date. *Id.*

The second way that the issue could arise was through what was then termed a parole release interview, which the Board conducted for each inmate before the inmate's release.[6] If such an interview indicated that the inmate had a present severe emotional disturbance or had engaged in serious institutional misconduct, the Board could conduct a hearing to determine whether to defer the inmate's release on parole. *Former* OAR 254-160-010(1).

Because the postponement issues could arise in two different ways, they were governed by two different divisions of the Board's rules, the predecessors to current Divisions 50 and 60. As now, the predecessors used cross-references to the predecessor to Division 30 to identify the rules by which the postponement hearings were to be conducted. *See former* OAR 254-150-010(1) (1979); *former* OAR 254-160-010(1) (1979). Significantly, however, the cross-references for the two divisions were phrased differently. The cross-reference rule for the predecessor to Division 50 was phrased the same way as is the current version of that rule except for the use of a different number to identify the predecessor to Division 30: "[T]he provisions of Division [30] as to appearance, disclosure and record shall apply." *Former* OAR 254-150-010(1)(a) (1979). In contrast, the cross-reference rule for the predecessor to Division 60 provided that, for postponement hearings under that division, "[t]he procedure for hearings in Division [30] shall apply." *Former* OAR 254-160-010(1) (1979).

There is no reason to think that hearings conducted by the Board to resolve identical issues would be meaningfully different depending on whether the Corrections Division or the Board began the process that led to them. Consequently, there is no reason to think that those involved in

---

[6] Parole release interviews are now called exit interviews.

drafting the rules intended to make a meaningful distinction when they used different phrases to identify the rules in Division 30 that were applicable to Division 50 and 60 parole postponement hearings. The rules have since been amended so that parole postponement for serious misconduct is now governed exclusively by Division 50 and postponement due to a present severe emotional disturbance is governed by Division 60, and the cross-reference rule for Division 60 has also been revised. Nevertheless, the way in which the rules initially combined the treatment of the two types of postponement bears on whether the differences in phrasing in the former and current cross-reference rules were intended to produce significant differences in the fundamental way in which the hearings are conducted.[7]

I turn to the second way in which the evolution of the rules bears on their interpretation. All of the cross-reference rules other than the one in Division 60 were adopted at the same time. As noted above, the original cross-reference rule for Division 60 made the "procedure for hearings in Division [30]" applicable to parole postponement hearings. *Former*

---

[7] It should be noted that the prior Division 60 rules included a rule that made the serious misconduct rules in Division *50* applicable to serious misconduct decisions under Division *60*. *Former* OAR 254-160-010(3) (1979). The fortuitous effect of that cross-reference is that serious misconduct proceedings under Division 60 would be conducted in accordance with the provisions of *both* Division 50 and Division 60, so the difference in the phrasing of the cross-reference rules regarding Division 30 in those divisions would not matter in such proceedings. The effect of the cross-reference in Division 60 to Division 50 is properly characterized as fortuitous for several reasons.

First, if the effect were intended, there would be a comparable cross-reference in *Division 50* so that the Division 60 formulation of the cross-reference to Division 30 would apply to Division 50 as well. Second, the same principle would be extended to postponement decisions under ORS 144.125(3) for a present severe emotional disturbance, but it is not. Finally, the phrasing of the prior Division 60 cross-reference to Division 50 indicates that it was intended to make the *substantive* provisions of Division 50 on serious misconduct applicable to Division 60 decisions on that issue. There are a number of those provisions in Division 50, so a cross-reference in Division 60 to those provisions was necessary to make them applicable. Otherwise, they would have had to have been restated in their entirety in Division 60. The cross-reference forestalled that. However, the inclusion of the cross-reference *to* Division 50 in Division 60 had the effect of incorporating the cross-reference rule *in* Division 50 to the applicable provisions of Division 30. Nothing suggests that the drafters gave any thought to the presence of that double cross-reference. In summary, the fortuitous effect of the cross-reference in Division 60 to the serious misconduct provisions in Division 50 does not undercut in any way the analysis presented in the text above.

OAR 254-160-010(1) (1979). That phrasing appears to be broader in its reach than the phrasing used in the cross-reference rules for the other two divisions, in that it could make all of the hearing rules in Division 30 applicable to parole postponement proceedings under Division 60, rather than just the provisions governing record, disclosure, and appearance or notice, which apply to Division 40 and 50 proceedings under the applicable cross-reference rules. *Compare id. with* OAR 255-040-0035 *and* OAR 255-050-0010(1).

The Board subsequently adopted the current Division 60 cross-reference rule, which now parallels the phrasing used in the Division 40 and 50 cross-reference rules except for the addition of the reference to Division 15 in the Division 60 rule. OAR 255-060-0006(2). Whatever the purpose for the change, there is no reason to think that it was intended to make the Division 30 rules *less* applicable to Division 60 proceedings than they are to Division 40 and 50 proceedings.

On that point, the addition of the cross-reference to Division 15 is interesting. The addition of that cross-reference appears to serve no purpose, because Division 15 consists of a general body of rules on Board records and their disclosure that applies to everything that the Board does. It is equivalent to a public record law for the Board. *See* OAR ch 255, div 15. Consequently, its provisions would bear on access to Board records for use in a Division 60 proceeding and on the subsequent disclosure of the records of such a proceeding without regard to whether Division 60 contained a cross-reference to it. Of course, that means that Division 40 and 50 proceedings are equally affected by Division 15 even though they have no cross-reference to it.

However, the drafter's decision to include a cross-reference to Division 15 in Division 60 may explain why the Division 60 cross-reference rule differs as it does from its Division 40 and 50 counterparts. Division 15 principally concerns Board records, that is, documents, while Division 30 concerns, among other things, what goes into the hearing record in the Board proceedings that are governed by it. "Record making" and "record," which are the terms used respectively in the Division 40 and 50 cross-reference rules, are singular

concepts. Any equivalent reference to the records covered by Division 15 would have to be plural. Although the solution is awkward, the drafter of the Division 60 rule appears to have used the plural "records" to cover both kinds of records, that is, the Board records that are subject to Division 15 and the hearing records that are subject to Division 30.

Similarly, the reference to the singular "procedure" for hearings in the prior version of the Division 60 cross-reference rule had to become, as it now is, a plural "procedures" for records, disclosure and notice, because rules on records, disclosure, and notice differ between Divisions 15 and 30, so a singular reference to "procedure" would not work. *Compare former* OAR 254-160-010(1) (1979) *with* OAR 255-060-0006(2). Finally, while adopting the basic tripartite structure of the Division 40 and 50 cross-reference rules, with their references to record, disclosure, and appearance or notice, the drafter of the revised Division 60 rule apparently chose to keep and make plural the term "procedures" that was used in the prior version of the Division 60 rule rather than replace it with the comparable term used in the Division 40 and 50 rules, "provisions." *Compare* OAR 255-060-0006(2) *with former* OAR 254-160-010(1) (1979) *and* OAR 255-040-0035 *and* OAR 255-050-0010(1). Again, nothing about those drafting decisions suggests an intention to create a meaningful difference among the divisions regarding the applicability of a rule as fundamental as OAR 255-030-0032 is to the conduct of hearings conducted under them.

In summary, the current version of the Division 60 cross-reference rule is an inelegant pastiche of comparable preexisting rules with the addition of an unnecessary cross-reference to Division 15. There simply is no reason to believe that the rule is intended to make the provisions of Division 30 any less applicable to Division 60 proceedings than they are to Division 40 and 50 proceedings. That is particularly true in light of the nature of the proceedings covered by the different provisions. Division 40 proceedings deal with the reduction of prison terms; Division 50 proceedings deal with the postponement of parole for serious misconduct; and Division 60 proceedings deal with release on parole and postponement of parole under ORS 144.125(3) due to "a present severe emotional disturbance" that constitutes "a danger to the health or

safety of the community," OAR 255-060-0012(3). All of the proceedings present a common, overarching issue: the timing of an inmate's release on parole.[8] Further, they all involve an examination of the inmate's conduct or condition to determine that issue. It would be anomalous for fundamentally different procedures to be used to conduct any one of the three types of proceedings. The provisions of OAR 255-030-0032 on the admission and use of evidence are basic to such proceedings, so it would be expected that that rule would apply to each type of proceeding if it applied to any of them. Even if there were some doubt about the application of the rule to Division 60 proceedings, which I dispute, the equivalent nature of Division 40, 50, and 60 proceedings would dispel it, because there is no doubt that the rule applies to Division 40 and 50 proceedings. It follows, therefore, that OAR 255-030-0032(3) applied to the Board's decision to postpone plaintiff's release on parole and that it required there to be substantial evidence in the whole record sufficient to permit a reasonable factfinder to make the finding under ORS 144.125(3) that the Board made.[9]

---

[8] Of course, that is the same issue presented by prison term hearings, *see* OAR 255-005-0005(42), which are also governed by the Board's Division 30 rules.

[9] The rules are not a model of draftsmanship. Nevertheless, their structure is fairly clear. The Board has used one division, Division 30, to state the generally applicable rules for the conduct of Board hearings and then has used cross-references to incorporate those rules into the rules for the other divisions. It did that to avoid the need to repeat the generally applicable hearing rules in all of the other divisions under which comparable hearings are held.

Division 50 proceedings are proceedings to postpone release on parole for serious misconduct. Division 60 proceedings include proceedings to postpone parole because of the presence of a severe emotional disturbance. There is no conceivable reason why the Board would establish a basic rule on evidence applicable to the former but not the latter. The lead opinion believes that it did that, however, apparently because the cross-reference rule in Division 50 uses the singular term "record" to incorporate the relevant Division 30 rules and the Division 60 rule uses the term "records." The difference in those terms does not bear the weight needed to justify an interpretation that is so at variance with any sensible understanding of the Board's rules in light of their structure and purpose. I hope that my very detailed discussion of the rules in my dissent has not obscured that basic point.

In summary, I cannot believe that a rule-bound agency such as the Board would not have a rule that governs the admissibility and admission of evidence in its Division 60 hearings but would leave it to the Fourteenth Amendment to supply the relevant guidance on that issue, particularly when the procedures required by the Due Process Clause of the Fourteenth Amendment are as imprecise and uncertain as they are.

There is no dispute that the habeas corpus statute requires the trial court to inquire into the lawfulness of plaintiff's continued incarceration. *Hamel I* makes that clear, as do ORS 34.580 and ORS 34.590.[10] In particular, *Hamel I* established that plaintiff is entitled to be released on parole if the record of plaintiff's 1997 exit interview did not provide a lawful basis for the Board to make the finding that it had to make under ORS 144.125(3) to postpone plaintiff's release. *Hamel I*, 330 Or at 187-88. That means, of course, that the required inquiry into the lawfulness of plaintiff's continued incarceration extends beyond the *existence* of the postponement order to an examination of whether the Board acted lawfully in entering it.

To perform that task, the habeas corpus court must determine the legal constraints that apply to the Board's postponement decision and whether the Board has complied with them. Defendant and the majority agree that that task at least requires us to determine if there is some evidence in the record to support the finding that the Board made under ORS 144.125(3) about the existence of a present severe emotional disturbance. They also seem to agree that the reason that the court is required to do that is because the Due Process Clause of the Fourteenth Amendment[11] imposes a substantive limit on the Board's authority to act. It requires that there be some evidence in the record to support the required finding under ORS 144.125(3) in order to permit the Board to make it. *See* 173 Or App at 452, 454, 456. Consequently, in

[10] ORS 34.580 provides:

"The court or judge before whom the party is brought on the writ shall, immediately after the return thereof, proceed to examine into the facts contained in the return, and into the cause of the imprisonment or restraint of such party.

ORS 34.590 provides, in turn:

"If no legal cause is shown for the imprisonment or restraint, or for the continuation thereof, the court or judge shall discharge such party from the custody or restraint under which the person is held."

[11] The Fourteenth Amendment provides, in relevant part:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

order to determine whether the Board acted lawfully by complying with the Fourteenth Amendment, the court must review the record to determine if it contains the quantum of evidence required by the Fourteenth Amendment.

Although defendant and the majority fail to recognize it, the same reasoning that applies to the Fourteenth Amendment applies to OAR 255-030-0032(3). The rule requires there to be substantial evidence in the whole record to support a finding in order for the Board to make it. That requirement is simply a higher legal or evidentiary requirement than that imposed by the Fourteenth Amendment, which requires only that there be some evidence to support the Board's finding. As noted earlier, however, state agencies such as the Board are required to follow their own rules. Consequently, if the record does not contain evidence sufficient to meet the higher evidentiary standard set by OAR 255-030-0032(3), then the Board has acted unlawfully.

The only difference between the analysis that I have just described and the one that defendant and the majority concede is appropriate is the source of the applicable legal requirement. But both the Fourteenth Amendment *and* OAR 255-030-0032(3) apply to and constrain the Board's authority to act. Further, there is no dispute that a state agency such as the Board is free to impose greater limits on its authority to act than are imposed on it by the federal constitution, unless the statutes under which it operates preclude it from doing so, and nothing suggests that the Board violated any statute by adopting OAR 255-030-0032(3) to limit its own authority to make the finding required by ORS 144.125(3).

Consequently, for the Board lawfully to postpone plaintiff's release on parole, the evidentiary standards imposed by the Fourteenth Amendment *and* by OAR 255-030-0032(3) must be met. Of course, the Fourteenth Amendment standard that requires that there be some evidence in the record to support the required finding will be met if there is substantial evidence in the record to support it, so, for purposes of habeas corpus, the issue reduces to whether the standard imposed by OAR 255-030-0032(3) has been met. That means that the habeas corpus court must review the

record for substantial evidence, as we correctly held in our last opinion in this case.[12]

I recognize, as does the majority, that the legislature eliminated APA review by us of parole release decisions by the Board, which means that we no longer conduct direct judicial review of those decisions. However, whether the legislature recognized it or not, the effect of the habeas corpus statute, when coupled with the Board's rules on postponement decisions, is to shift review of Board decisions for substantial evidence from us under the APA to the trial courts under habeas corpus.

The analysis presented above establishes the truth of that conclusion, but a review of the APA itself provides support for the conclusion as well. There are two sources in the APA for the requirement that administrative decisions in contested cases be supported by substantial evidence.[13] One is the requirement in ORS 183.450(5), which provides that

"[n]o sanction shall be imposed or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party, and as supported by, and in accordance with, reliable, probative and substantial evidence."

---

[12] The foregoing analysis demonstrates why courts are not free to choose the review standards to apply under the habeas corpus statute to determine the legality of a challenged governmental decision to keep a person such as plaintiff in custody. The standards that courts apply are determined by the substantive law that constrains the authority of the relevant agency to act. When we have identified the relevant law that imposes those limits, that law will identify the standards that we must apply to determine the lawfulness of the agency's actions, absent some limit imposed by the habeas corpus statutes themselves on our review authority. *Cf., e.g.*, ORS 34.600(3) (requires remand to custody of any person in custody for contempt without regard to the legality of the finding of contempt if the committing authority had jurisdiction to issue contempt order).

[13] The Parole Board is exempt from many of the provisions of the APA, including most of the provisions that directly govern the conduct of contested cases by agencies, *see* ORS 183.315(1), (5)(a), but the discussion in the text nevertheless provides useful insight into the relationship between two distinct statutory sources for the requirement that most agency contested case decisions be supported by substantial evidence: one that imposes that requirement directly on the agencies and one that does so as a consequence of judicial review. The legislature could change one or the other without necessarily eliminating or altering the substantive requirement.

The other is the requirement in ORS 183.482(8)(c), which provides that a court on judicial review of an agency's contested case order

"shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the whole record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

If the legislature repealed ORS 183.450(5), agencies that formerly were subject to that provision would continue to be subject to the legal requirement embodied in it, notwithstanding the repeal, if the agencies' contested case orders were still subject to judicial review by us under the APA. That is because the review function assigned to us by ORS 183.482(8)(c) would require us to continue to test the agencies' orders for substantial evidence, which would require them, in turn, to continue to meet that standard themselves, notwithstanding the repeal of ORS 183.450(5), the statute that directly imposes that requirement on them.

The converse would also be true if the legislature kept ORS 183.450(5) but amended ORS 183.482(8)(c) to provide that we are to review agency contested case orders to determine if they are lawful. Under the amended statute, we would have to review agency orders for substantial evidence, because ORS 183.450(5) requires there to be substantial evidence in the whole record in support of a finding for the agency to make the finding, and an agency would violate that statute, and thereby act unlawfully, if it made a finding in the absence of the required evidence.

Of course, the APA does not direct us to review contested case orders to determine if agencies acted lawfully. Instead, the judicial review statute, ORS 183.482, distinguishes among four different types of legal requirements—procedural requirements, the substantive requirements of correctly interpreted law, the limitations imposed on the exercise of agency discretion, and the existence of substantial evidence to support agency findings—and specifies different

treatment for each type. *See* ORS 183.482(7), (8). Nevertheless, my hypothetical exercise is instructive, because it illustrates that court review of agency findings for substantial evidence does not depend on a statute that explicitly imposes that requirement on a court, any more than an agency requirement of substantial evidence to support its findings depends on a statute or rule that directly imposes that requirement on the agency. Both courts and agencies may be required to review records for substantial evidence as a consequence of the substantive law applicable to each, which is exactly what the Board rule on substantial evidence in OAR 255-030-0032(3) does to a habeas corpus court that is required to determine if the Board acted lawfully by making the finding required by ORS 144.125(3) to support its decision to postpone an inmate's release on parole.[14]

As the foregoing discussion should make clear, *Meadows* did not reject substantial evidence as the standard for what constitutes legally sufficient evidence to support a Board decision under ORS 144.125(3) to postpone an inmate's release on parole, and, if it did, we clearly erred in doing that and should correct our error by overruling *Meadows*. The lead opinion errs in concluding otherwise. The consequence of that error is that plaintiff will have to return to the Supreme Court to correct our latest error in order

---

[14] The majority refers repeatedly in its opinion to the fact that the Board decision whether to postpone an inmate's release on parole is a discretionary decision under ORS 144.125(3). That is true, but it has no bearing on the scope of our review. The Board exercises its discretion *after* it has made the required finding under the statute. *See* ORS 144.125(3). We review that finding for whether it is lawful in light of the applicable law, which, as explained at length above, includes OAR 255-030-0032(3). Although in many settings the grant of authority to make discretionary decisions may imply a deferential standard of review, that general principle has no bearing here.

The situation in this case is similar to that of an agency such as the OLCC that is governed by the APA and has discretion whether to revoke a liquor license or to take similar action. If the revocation decision depends on the existence of predicate facts, the agency's findings on those facts will be reviewed for substantial evidence while its discretionary decision to revoke will be reviewed under a different legal standard. *Compare* ORS 183.482(8)(c) *with* ORS 183.482(8)(b). In other words, there are not generic principles that apply to court review of discretionary agency decisions that operate irrespective of the rules, statutes, and constitutional provisions that bear on the work of the affected agency.

finally to obtain the release from prison to which we already have determined he is entitled under the correct legal standard. It should not be so hard for us to get the statutory scheme right.[15]

Edmonds, J., joins in this dissent.

---

[15] To avoid any misunderstanding, it is important to note that the majority has determined the standard of review that applies to habeas corpus review of parole postponement decisions under ORS 144.125(3), including the applicability of OAR 255-030-0032(3) to those decisions, and has applied that standard to this case. *See* 173 Or App at 453-58; 173 Or App at 459 (Brewer, J., concurring). Consequently, our decision in this case will control our review of all future habeas corpus cases involving parole postponement decisions under ORS 144.125(3). It also is important to note that the trial court dismissed the writ is this case on defendant's motion under ORS 34.680(1), based on the evidence submitted by defendant in support of his motion. Such a dismissal is equivalent to a dismissal based on the grant of a motion for summary judgment. *See, e.g., McClintock v. Schiedler*, 123 Or App 334, 336 & n 2, 859 P2d 580 (1993). Consequently, any deficiency in the habeas corpus record on which to determine whether defendant was entitled to judgment in his favor under the applicable standard of review presents a problem for defendant, not plaintiff. Furthermore, defendant has not argued in his motion for reconsideration that there is any deficiency in the record that prevented us from conducting a review of the record for substantial evidence. His sole argument on the merits was that the standard for legally sufficient evidence was the existence of some evidence in the record to support the Board's findings, rather than the substantial evidence standard that we had applied.